## BLOUNT VS. THE CITY OF JANESVILLE.

CONSTITUTIONAL LAW. (1) *Special Assessments.* (10) *Curative Statute.*

CHARTER OF JANESVILLE. (2–8) *Repaving street with Nicholson pavement — What expenses chargeable to adjoining lots, and to ward fund, respectively.* (9, 10) *Recommendation of majority of lot owners — Curative act.* (11) *Powers of circuit court and of city council under curative act — Liabilities of plaintiff as to interest on assessment — New tax warrant and notice required.*

1. Special assessments for local improvements have been upheld by this court as an exercise of the taxing power; and the levying of an assessment to pay for paving a street a *second* time is not open to any constitutional objections which do not equally lie against such an assessment for paving the street the *first* time.

2. Where, by a city charter, the expense of grading and paving a street is to be assessed upon the contiguous lots, while that of keeping the street in repair, after it has been constructed, graded and planked or paved, is payable out of the ward fund, *it seems* that if a street once graded and paved with stone is ordered to be re-graded and completely re-paved with a different material (as with the Nicholson pavement), this would not be a *repairing* of the street within the meaning of the charter, but an exercise of the power of *paving* the street; and the expense would be chargeable to the adjoining lots.

3. The above construction of defendant's charter is at any rate determined to be the sense of the legislature by the amending act, P. and L. Laws of 1869, ch. 298, sec. 14.

4. Though the expense of *grading* a street is by the charter chargeable to the lots on both sides of such street *throughout its whole extent*, yet where the grading (though let by a separate contract) is merely *accessory* to the laying of the Nicholson pavement (being designed to prepare the street therefor), it may properly be assessed upon the contiguous lots alone, as a part of the expense of *paving.* *Dean v. Charlton* (23 Wis., 590) followed.

5. There was no irregularity in including in the general assessment the expense of setting new curbstones for the entire extent of the improvement, and then crediting the owners of lots in front of which the curbstones previously set were allowed to remain, with the cost of setting new curbstones in front of those lots; the charter providing that where the lot owner has already made an improvement similar to the one proposed his lot shall be excluded from the computation and assessment of the expense.

Blount vs. The City of Janesville.

6. By defendant's charter, the expense of constructing crosswalks in the improvement of the streets is payable out of the ward fund, and not chargeable against adjoining lots; and the curative act relating to assessments for paving certain streets with the Nicholson pavement (ch. 243, Laws of 1871) was not intended to authorize an assessment in contravention of the charter, in that particular.

7. Certain parts of the pavement having been constructed for the use of the public as crosswalks, and being in fact used as such, the fact that they are constructed of the same materials as the rest of the pavement (though with a slightly greater elevation), does not deprive them of the character of crosswalks, nor make the expense of their construction chargeable to adjoining lots.

8. Under the terms of said charter, is the cost of constructing the *street intersections* to be included in the aggregate sum for improving a street, which is chargeable (in the proportions specified by the charter) upon lots adjoining such improvement? DIXON, C. J., answers the question negatively; COLE, J., affirmatively. LYON, J., took no part in the decision.

9. The charter authorized the council to order the paving of a street only after receiving a recommendation thereof signed by a majority of the resident owners of lots bounded by the street. *Held*, that the mere receipt of such a recommendation would not be sufficient to sustain an order of that character, if the signatures were obtained " by the falsehood and fraud of members of the common council."

10. But a subsequent statute declaring that such recommendation shall be held conclusive evidence of the facts therein stated, and also declaring valid all proceedings of the council after its reception which would have been authorized had the recommendation been sufficient (P. & L. Laws of 1871, ch. 243), is a valid act, and cures any defect in the recommendation; it being within the power of the legislature in the first instance to authorize the council to order the pavement of the street at the expense of the adjoining lot owners without any such recommendation. *Hasbrouck v. Milwaukee* (13 Wis., 37) distinguished.

11. The charter of Janesville provides that if any tax levied shall be set aside by an order of court, the common council shall forthwith re-levy and re-assess the same, *with interest* thereon at seven per cent. After the special assessments here in question were set aside for irregularities in the proceedings, the legislature passed an act validating the proceedings, and also authorizing a re-assessment of the tax if it became necessary or should be deemed advisable by the city council. A majority of the court (Justice LYON not sitting) express the opinion (the points not being strictly involved in the judgment):

(1.) That the circuit court may be able, without any re-assessment,

to determine the amount which plaintiff should pay, under the pro-
visions of the charter, as a condition of its restraining the collection
of the excess.

(2.) That the interest at seven per cent. should be allowed, perhaps,
*from the date of the curative act,* but not from an earlier date.

(3.) That the curative act does not, on its face, profess to legalize
the warrant and assessment roll in the hands of the treasurer, nor
the notice originally given by him to the tax-payers to make pay-
ment; and it cannot be held to have that effect. Another tax warrant
must be issued, and another notice published, before interest will be-
gin to run at *twelve* per cent. as provided by sec. 9, ch. 7 of the charter.

(4.) That the percentage imposed by sec. 20 of said chapter, by way
of *penalty,* cannot be collected in this case. The legislature has not
attempted, by the act of 1871, to impose a penalty, even if it could
do so.

APPEALS from the Circuit Court for *Rock* County.

Action to restrain the collection of certain special assessments
made against plaintiff's lots fronting on West Milwaukee Street
in the city of Janesville, for grading that street and repaving
it with the Nicholson pavement. An injunctional order hav-
ing been granted in accordance with the prayer of the com-
plaint, the court, after a hearing, made an order as follows:
1. "That so much of said injunctional order as restrains the col-
lection of said assessment as made for the paving and the
treasurer's commission thereon, be continued until the further
order of this court." 2. "That so much of said order as re-
strains the collection of said assessment as made for the prepa-
ration of the roadbed, or grading, and the curbing, be and the
same is hereby dissolved," etc.

The defendant city appealed from the first part of this order;
and the plaintiff from the second part.

*I. C. Sloan,* for the plaintiff, contended, 1. That by a fair
construction of the charter, the expense of repaving a street can-
not be charged upon the contiguous lots; that the taxing pow-
er cannot be exercised by a municipal corporation except when
*unequivocally* delegated by the legislature (Blackw. T. T., ch.
31; *Mays v. Cincinnati,* 21 Ohio, 273; *Sharp v. Speir,* 4 Hill,

76); that the power to sell land for taxes is a high prerogative power, and is also a limited power, and must be strictly construed and pursued. *School District v. Merrill*, 12 Conn., 437; *Kemper v. McClelland*, 19 Ohio, 324; *Nichol v. Nashville*, 9 Humph., 252; *Doe v. Chunn*, 1 Blackf., 336; *State v. Bk. of Newbern*, 1 Dev. & Bat. Eq., 218. He then analyzed the provisions of the charter on the subject; and as to the meaning of the phrase "keeping in repair" he cited *Brecknock v. Pritchard*, 6 Term, 750; *Beach v. Crain*, 2 Coms., 86; *People v. City of Brooklyn*, 21 Barb., 484. 2. That where a street is once opened and paved, and has thus become a part of the public highways of the city, the repaving it, either with a new and different pavement or by repairing the old one, is a part of the general duty of the corporation, and *the legislature has no power to require* that such work be paid for by a special assessment on the ad· joining property. The whole system of special assessments, by which lots are charged simply in proportion to their frontage, is confessedly a monstrous injustice and abuse, and can only be upheld in any class of cases on the ground that it has continued so long that the attempt to correct it now would be attended by evils almost as great as those which flowed from its establishment (*Weeks v. Milwaukee*, 10 Wis., 242; *Hill v. Higdon*, 5 Ohio St., 249, opinion by RANNEY, C. J.; Const. of Wis., art. XI., sec. 3); and this abuse ought not now to be *extended* to a new class of cases. *Hammett v. Philadelphia*, 65 Pa. St., 146. 3. That the assessment in this case was void because no recommendation in writing, signed by a majority of the resident owners of property bounded by the street, was presented to the council before the work was ordered; and that ch. 243, P. & L. Laws of 1871, which attempts to cure this defect, is invalid because it attempts to destroy or injuriously affect rights growing out of past transactions which have become fixed and vested. Smith's Com., 289 et seq.; Potter's Dwarris, 164 et seq.; *Denney v. Mattoon*, 2 Allen, 361; *Hasbrouck v. Milwaukee*, 13 Wis., 50. 4. That the assessment was illegal and void because it included several

important items not properly chargeable upon the lots : (1) the expense of twelve crosswalks ; (2) the expense of grading the street ; (3) the expense of setting new curbstones where the old ones were allowed to remain ; (4) the expense of grading and paving the street intersections.

*A. A. Jackson, J. W. Sale* and *John Winans,* for defendant, argued, upon the various provisions of the charter, that the cost of *repaving* a street is chargeable to the contiguous lots : and to the point that repaving is not a repair, they cited *Matter of Repaving Fulton St.,* 29 How. Pr. R., 429. 2. As to the legislative power to make the cost of repaving so chargeable, they contended that it was sustained by *Weeks v. Milwaukee,* 10 Wis., 242, and *Hill v. Higdon,* 5 Ohio St., 249, and they also cited *Lumsden v. Cross,* 10 Wis., 283. 3. As to the validity of ch. 243, P. & L. Laws of 1871, curing defects in the original assessment, they cited *May v. Holdridge,* 23 Wis., 93 ; id., 609, 610 ; 17 id., 71 ; 24 Wend., 65, and other cases cited in their brief in *Durkee v. Janesville,* 26 Wis., 699. 4. As to the propriety of including the grading in this case in the special assessments, they relied on *Dean v. Charlton,* 23 Wis., 598, and cited also 20 Iowa, 290, 291.

The following opinion was filed at the June term, 1871

Cole, J. These are cross appeals from different parts of the same order. The action is brought to restrain the collection of certain special assessments made against the plaintiff's lots on West Milwaukee Street in the city of Janesville, for regrading that street and repaving it with the Nicholson pavement. The circuit court granted the injunction to restrain the collection of the assessment for repaving the street, but dissolved it so far as the assessment for regrading the street and preparing the road bed was concerned. So each party appeals from that portion of the order adverse to him. Both branches of the order depend essentially upon the same questions of law and fact, and the appeals will therefore be considered together. And the first ques-

tions which will be considered are those arising under the provisions of the city charter.

It is first insisted on the part of the plaintiff, that under the charter the expense of repaving a street cannot be charged upon the contiguous lots. It is claimed that this is reasonably clear from the language of the different provisions of the charter. By section 18, chapter 6 of the charter (P. & L. Laws of 1866, ch. 474), it is enacted that the common council shall have power to cause any street or any part thereof to be graded, worked, graveled, macadamized, paved or repaved, planked or replanked and repaired, and to cause any sidewalks, crosswalks, drains, sewers or culverts to be made therein, as it shall deem necessary, and the same shall be repaired or relaid as may be ordered by the common council; providing that no street or any part thereof shall be graded, macadamized, paved or repaved, planked or replanked, without a recommendation in writing, signed by a majority of the resident owners of property which is bounded by the street thus improved. By the next section it is provided, that the common council, prior to ordering any street to be graded, paved or repaved, shall cause accurate specifications of the proposed work to be prepared, and shall advertise, in a newspaper published in the city, for sealed proposals for the performance of the work. When such proposals have been received, the common council is to determine which is the most favorable, and may, by a vote of a majority of its members, accept such proposal and authorize the construction of the work, directing the expense thereof to be assessed in the manner specified therein.

In case the work was grading or paving a street, the expense of the whole work was to be ascertained, and each lot on both sides of the street was to be assessed with its proportion of the expense, which was to be ascertained by multiplying its number of feet front by the average expense per foot, excluding cross-streets from the computation. If the work was the construction of any crosswalk, culvert or sewer, or the keeping in

repair of crosswalks, sewers, streets, etc., after the same had been constructed, graded, planked or paved, the expense thereof was to be paid out of the ward fund. When the work was the construction, repairing, relaying or replanking of any sidewalk, each lot fronting thereon was to be assessed with its just proportion of the expense.

It is claimed that these provisions show with reasonable certainty that the work of *repaving* a street was to be done at the expense of the ward fund, and not at the expense of the contiguous lots. Beyond all question, it is said, the expense of keeping streets in repair is chargeable to this fund, and repaving a street is nothing more than keeping it in repair.

It is undeniably true that a covenant to repair has generally been construed as importing the duty to rebuild in case of total loss or destruction of the property. The case of *Beach v. Crain*, 2 N. Y., 86, is an illustration of this rule. But we do not think the word "repair" is used in this enlarged sense in the city charter. It refers rather, we think, to the ordinary repairs which are necessary to keep the street in a good condition when there has been a partial waste or destruction of the existing material. But in this case the old macadamized pavement, consisting of stone, was removed, and one consisting of wood mainly, or at all events of an entirely different character, was substituted in its place. It is not usual to characterize such a new structure as being merely a repair of an existing improvement. But whatever doubt might arise upon the original provisions of the charter in regard to the right to charge the lots abutting upon the street with the expense of repaving the same, is removed by the amendatory act of 1869. That act authorizes the common council to determine the kind of pavement which shall be used for paving or repaving a street, and, in case it is determined to use any pavement which is patented, it has the power to procure the right to use such pavement, and the sum paid therefor is to be added to the expenses of such paving or repaving, and be apportioned there

with, and charged upon the property properly chargeable with the expense of such paving or *repaving*, and be collected in the manner provided in section 19 of ch. 6 of the city charter. Sec. 14, ch. 298, P. & L. Laws of 1869. This enactment shows very clearly, the sense of the legislature as to the meaning of the provisions of the charter, and that it intended the expense of repaving a street should be chargeable to the contiguous property. Such an improvement does not properly come under the head of repairs which are made at the expense of the ward fund.

Another objection taken to the validity of the assessment is, that the expense of twelve crosswalks is included therein, which, by subd. 2, sec. 19, is to be paid out of the ward fund. To this objection it is answered that there are no crosswalks, within the meaning of that term; that the Nicholson pavement is a continuous one, being laid to the north and south lines of West Milwaukee Street, with slight elevations in the pavement at the street intersections, which serve for crosswalks, but which are really a part of the pavement, and should be paid for as such. We are inclined to adopt the latter view of this matter. What are termed crosswalks at the street intersections are substantially and really parts of the main pavement, and the fact that there is an elevation of the wooden block paving of three inches in the center of the walk, does not change their character. They are constituent parts of the main work, and do not anywhere extend beyond the proper north and south limits of West Milwaukee Street.

A still further objection is, that the grade of the street was changed, and the expense of this grading is included in the assessment on the lots contiguous to the improvement, while the charter requires that such grading be charged upon the lots on both sides of the street "throughout its whole extent." But this objection is fully answered by the decision in *Dean v. Charlton*, 23 Wis., 590–609, on a precisely similar question, where Mr. Justice PAINE says: "The grading, although let by a sep-

arate contract, was merely accessory to the principal contract for paving the street. It was to prepare the street for the pavement, and doubtless would not have been ordered except in connection with the order for the pavement." If the expense of the new pavement was properly chargeable to the lots contiguous to the improvement, then the expense of grading, which was a part of the main work, should be so charged.

Again, it is said that a large extent of curbstones was not taken up, but the expense of setting new curbstones for the entire extent of the improvement is included in the assessment, and the owners in front of whose lots the curbstones were allowed to remain are credited on their assessment with the cost of setting new curbstones. But, as we understand it, this is really accomplishing the object intended in section 19 of the charter. That is, where the owner of a lot fronting on the street within the limits of the proposed improvement has already made an improvement similar in kind and character to the one proposed, then his lot is to be excluded from the computation and assessment of the expense. In other words, where a lot owner has once made and paid for the improvement ordered, he shall not pay for it a second time while the original work remains in a good condition. Under the course adopted in this case, each lot which had a proper curbing contributes nothing towards the expense of setting new curbstones. This, as it seems to us, was truly carrying into effect the real intent of the provisions of the charter.

These remarks sufficiently dispose of the material objections to the validity of the special assessment which arise under the provisions of the charter, except the one that there was no recommendation for the repavement, in writing, signed by a majority of the resident owners of property bounded by the street, presented to the common council before the work was ordered. Such a recommendation was in fact presented to the common council, dated May 13th, 1869, which was signed by a majority of the resident owners of lots bounded on West

Milwaukee Street, and which asked that that part of the street from the west end of the bridge over Rock River to the east line of High Street, be paved with the Nicholson pavement. This was accompanied by an affidavit of J. B. Doe, in which he states that he is acquainted with the owners of lots on the street, and that this recommendation was severally signed in his presence by a majority of the resident owners of property bounded by the street. But it appeared by the affidavit of Mr. Tallman, that quite a number of the signers of this recommendation were opposed to the laying of the Nicholson pavement in the street, and protested against the measure while it was pending before the common council, alleging that they had been induced to sign the recommendation through misrepresentation and falsehood on the part of certain members of the common council.

The condition that a street should not be paved or repaved without a recommendation of a majority of the owners of property which was to pay for the improvement, was obviously intended as a check upon the action of the common council, and the spirit of the provision would not be fulfilled unless the signers should make the recommendation freely and upon a proper knowledge of the facts. Certainly, if they were induced to sign the recommendation through the falsehood and fraud of members of the common council, there is no reason for saying that they are bound by the recommendation. I should, therefore, be inclined to hold the objection that there was no such recommendation as the charter contemplated, an insuperable one, were it not for the curative statute of 1871 (ch. 243, P. & L. Laws of 1871). This law, in effect, provides that this recommendation shall be held conclusive evidence of the facts therein stated ; and that all the proceedings of the common council, after the reception of the recommendation, relating to the subject matter thereof, which would have been authorized had the recommendation been sufficient, are legalized and declared valid. This statute was manifestly intended to

be retrospective in its operation; and, if the legislature had power to enact it, it cures the defect in the proceedings. It is said, however, that the enactment confessedly attempts to change the rights of parties in respect to transactions wholly past and concluded, and that the legislature had no constitutional authority to pass it. But it seems to me that the law must be sustained upon the doctrine laid down in the cases of *Tallman v. The City of Janesville*, 17 Wis., 71; *Cross v. The City of Milwaukee*, 19 id., 509; *May v. Holdridge*, 23 id., 93, and cases of that character. The principle upon which these decisions rest is very clearly stated by Judge Cooley, in his work on Constitutional Limitations, as follows: "If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something which the legislature might have dispensed with the necessity of by prior statute, then a subsequent statute dispensing with it retrospectively must be sustained." P. 371. Now there would not seem to be room for a reasonable doubt about the power of the legislature to have authorized the common council in the first instance to order West Milwaukee Street to be paved with the Nicholson pavement at the expense of adjoining lots, without any recommendation of the owners of property on that street. The legislature might have dispensed with any such check upon the action of the common council in regard to the improvement; and, having the power to dispense with all recommendations upon the subject, it can, upon the principle just stated, render it immaterial by a subsequent statute. For, as remarked by Mr. Justice PAINE, in *May v. Holdridge*, "these special assessments for local improvements are to be regarded as one of the constitutional modes of taxing the citizen for the public benefit; and whenever defective proceedings for that purpose have been had, these must present the same basis for the application of the corrective power of the legislature, that would be furnished by defective proceedings to assess a general tax." These statutes, enacted for the purpose of curing defects and irregularities

in proceedings for the assessment and collection of taxes, stand upon different grounds from the legislation referred to in the cases of *Hasbrouck v. The City of Milwaukee*, 13 Wis., 37, and *Denny v. Mattoon*, 2 Allen, 361. It is unnecessary to dwell upon the distinction here. It is sufficient to say that it is the settled doctrine of this court, that there exists in the legislature power to cure these defects in tax proceedings, although the rights of parties are affected thereby. And as the law of 1871 only attempts to validate the acts of the common council in ordering the street repaved without the proper recommendation — a thing which the legislature might have previously authorized — we think it must be sustained. In the case of *Weeks v. The City of Milwaukee*, 10 Wis., 242, and in a number of other cases which have come before this court for determination, these special assessments for local improvements have been held valid. We still think they are not obnoxious to any constitutional objection, although we are well aware the system sometimes leads to great abuse and oppression. But the corrective power for such evils rests with the legislature, and not with the courts. And if these local assessments can be sustained for the expense of once paving the street, we see no reason for holding them invalid when made for a new pavement which may have become necessary. The power to make the assessments for the second improvement is necessarily included in the power to make it in the first instance. We have already intimated that according to our construction of the provisions of the charter, the expense of repaving a street is made chargeable upon the lots abutting on the street, and that such an improvement was not properly repairs which are made payable out of the ward fund. And this being so, the only remaining question is, whether the legislature has the constitutional power to authorize a municipal corporation to *repave* a street at the expense of the lots on each side of it ; and it seems to me that if these special assessments can be sustained for paving the street once, they must be for a second pavement. I can see no satisfactory reason for making a dis-

tinction in the two cases. These special assessments for local improvements are an exercise of the taxing power, and it is difficult for me to understand how that power can be said to be limited to paving the street once. I am aware that Mr. Justice SHARS-WOOD, who gave the majority opinion in *Hammett v. Philadelphia*, 65 Pa. St., 146, says that when a street is once opened and paved, thus assimilated with the rest of the city and made a part of it, then all the particular benefits to the locality derived from the improvement have been realized, and that the expense of repaving the street cannot be assessed upon the lots abutting upon it. But suppose the original pavement is destroyed, and as a consequence the street becomes impassable for carriages, and a new pavement is laid. Is there not the same ground for saying that the property along the street is benefited by the new improvement as there is for saying that it was benefited by the one first laid ? The truth is, this whole system of local assessments is environed with difficulty, and frequently leads — as all admit who have examined the subject — to monstrous injustice and oppression. Our constitution sanctions it, but makes it the duty of the legislature, when authorizing municipal corporations to exercise this power of imposing local assessments, to restrict it so as to prevent abuses thereof. In the case of *Hammett*, considerable stress is laid in the majority opinion upon the circumstance that the object of the improvement there ordered was not to bring or keep Broad Street in a condition to be used for the advantage and comfort of those who lived upon it, and for ordinary business and travel, but it was intended to fit that street for a "great public drive — a pleasure ground along which elegant equipages may disport of an afternoon." What influence that circumstance may have had upon the decision in that case, it is impossible to say. But it seems to me that the power to make the assessment for the second improvement is necessarily included in the power to make it for the first structure. This court, after mature consideration, sustained the validity of local assessments

in the Weeks case, and has re-affirmed the doctrine there laid down in a number of cases which have since arisen. The principle of those decisions is decisive of the question we are now considering. The conclusion is inevitable that if a special assessment can be made upon the adjoining lots for paving the street in the first instance, it can be made for repaving the street when such repavement becomes necessary by the waste and decay of the existing material. The injustice and inequality of constantly repaving streets at the expense of the owners of the abutting lots are admitted, but this is the vice of the whole system.

The other objections taken to the validity of the assessment have not been overlooked; but we do not deem them of sufficient importance to require special notice. We think that part of the order appealed from by the city, which restrains the collection of the assessment made for paving the street with new pavement, must be reversed; and that the other part of the order, appealed from by the plaintiff, must be affirmed.

*By the Court.*— So ordered.

A rehearing was granted, and the following opinions were filed at the June term, 1872.

DIXON, C. J. These are separate appeals from different parts of the same order. I have come to the conclusion that the part of the order appealed from by the city should be affirmed, and that the part from which the plaintiff appeals should be reversed.

I take it that the curative statute upon which the city relies (ch. 243, P. &. L. Laws of 1871), is susceptible of no construction which would make it subversive of the fundamental principles of assessment, as established by the charter. For example, I understand, if it was not the intention of the charter that lot owners should under any circumstances be charged with the expense of crosswalks or of grading and paving street in-

tersections, that then it was not the intention of the act above referred to, to make valid an assessment upon the lots for those forbidden or unauthorized purposes, or to legalize an assessment so made, in violation of the fundamental rules or principles fixed by the charter. It is not contended that the act should receive a construction which would make it so operate; and it seems very clear that such could not have been the design of the legislature in passing it.

I am quite satisfied that the expense of the crosswalks, although made of the same materials as the pavement, and with very little if any difference in the mode of construction, should come out of the assessment. Upon this point counsel do not disagree as to the proper construction of the charter, that it requires crosswalks to be paid for out of the ward fund, or the funds of the city at large, and not by assessment upon the lots abutting on the street. The only controversy with respect to the crosswalks has been, whether, by the similarity of materials and construction, they were not to be considered as merged in the pavement, or as so having become a part of it that their separate existence and identity as crosswalks was lost, and they can be no longer so recognized. It is clear to my mind that this supposition or theory of merger or extinguishment cannot be maintained on any such ground, consistently with the provisions of the charter or the rules of assessment established by it. The charter recognizes the designated spaces at the street crossings as crosswalks, and so must we, and so must the common council or officers whose duty it is to make the assessments. The peculiarity of construction, or nature of the materials made use of, has nothing to do with the question, provided the structure or thing completed serves as a crosswalk and was prepared, intended and accepted to be used as such by the public authorities. This seems to me to be the only rational and proper test; and I think the expense of the crosswalks was improperly included in the assessments made against the lots, and so was not legalized by the act.

And I am also of opinion that the same objection is good and must prevail as against the expenses of grading and paving the street intersections, which were also included in the assessments. The charter did not authorize work of that nature to be charged by assessment upon the lots. Section 19 of sub-chapter VI. of the charter (ch. 474, P. & L. Laws of 1866, page 153), provided: " In case the work shall be the paving, macadamizing, planking or curbing any street, highway, lane or alley, or any part thereof, the common council shall appoint some competent person to ascertain the aggregate front length of lots and parcels of land on both sides thereof, limited to the proposed improvement and bounded thereon, and the front length of each lot and parcel of land bounded on such improvement, with a correct description thereof, and the name of the owner, if known. The said council shall then determine the expense of the whole work, including the surveying, if any, the specifications, advertising, treasurer's commissions, and preparing assessment lists, and cause the average expense upon each foot front of lots and parcels of land on both sides of such street, highway, lane or alley within the limits of such improvement, and bounded thereon, *excluding cross streets from the computation*, to be ascertained, and each lot or parcel of land shall be assessed with its proportion of the expense, to be ascertained by multiplying its number of feet front by the average expense per foot: *Provided*, that whenever the owner or owners of any lot or lots, parcel or parcels of land, fronting any street, highway, lane or alley where such improvement is proposed to be made, and within the limits of said proposed improvement, and bounded thereon, have already made any improvement on such street, highway, lane or alley in front of his or her lot or lots, parcel or parcels of land, within the limits of said proposed improvement and bounded thereon, of the same or of similar kind and character as the proposed improvement, said lot or lots, parcel or parcels of land, so improved by such owner or owners, *shall be excluded from the computation and*

*assessment;* and *all expense* of such improvement to be made, *shall* in such case *be assessed* upon the *other* lot or lots, parcel or parcels of land so fronting on the street, highway, lane or alley where such improvement is proposed to be made, and within the limits and bounded on said improvement, *as hereinbefore specified.*"

The question arising upon the construction of this statute is, whether the expression, "·excluding cross streets from the computation," is to be understood as signifying that cross streets are to be excluded from the frontage or feet front on the street upon which the average expense of doing the *whole* work is to be assessed, so as to make such expense fall entirely upon the lots, or whether it is to be understood in the sense that cross streets are to be excluded from the computation of expenses in ascertaining what the average expense upon each foot front of the lots may be. The question seems to be, whether the exclusion of the cross streets applies to the computation of expenses which are to be assessed, or whether it applies to the computation of feet front of lots upon which *all* expenses are to be charged. The last is the construction put upon it by counsel for the city. They interpret it as if the words were, " excluding cross streets from the computation of feet front." I do not know as I state their position clearly and intelligibly. I am sure I do not as clearly and intelligibly as they did at the bar, and I *doubt* whether I am capable of doing so. I have looked upon the opposite construction as so clear, and the same has become so firmly impressed on my mind, that I confess to the utmost difficulty in seeing the question in any other light. But my brother COLE, who differs from me and agrees with counsel for the city, will undoubtedly be able to do their position greater justice when he comes to write his opinion. To my mind it is very·plain that the cross streets are to be excluded from the computation of the average expense which is to be assessed upon each foot front of the lots. The following transposition will, perhaps, make my reading more clear;

Blount vs. The City of Janesville.

"The said common council shall then determine the expense of the whole work, including the surveying, etc., and, *excluding cross streets from the computation*, cause the average expense upon each foot front of lots and parcels of lands on both sides of such street, highway, lane or alley within the limits of such improvement and bounded thereon, to be ascertained." I cannot view the statute in any other light or give it any other construction than if such were the arrangement of the different parts of the sentence or clause under consideration.

But suppose the language to be ambiguous, which I do not see, but which I must yet concede because others differ so widely from me; then the language of the proviso must, as it seems to me, settle the controversy. The intention of the writer, and so of the legislature, is made very clear when we come to the provision there made for cases where the owners of lots or parcels of land have made the same or a similar kind of improvement on the street in front of their lots or parcels of land. Such lots or parcels of land are to be excluded entirely from the assessment, which shows that only the expense of the work or improvement in front of the lots themselves was to be charged to or assessed upon the lots. If this were not so, then it would follow that the lots or parcels of land mentioned in the proviso would escape entirely the burden of paving the street intersections, and that burden would be cast as an additional or increased assessment upon the other lots and parcels of land on the street; which the legislature never could have intended. This view seems to me decisive of the question. It explains the intention of the legislature, if, before we come to the proviso, or without it, the language of the statute can be said to be ambiguous.

And it occurs to me furthermore to observe, with respect to the principal question, that there seems to be no propriety in considering cross streets as "lots and parcels of land on both sides of such street," for the purpose of applying the exception or exclusion of cross streets, so as to take such streets out of

the " lots or parcels of land " to be assessed in payment for the improvement. It would not occur to any one, I think, that cross streets could have been intended under the description, " lots or parcels of land on both sides of such street," if no exception had been made. Being public property, and as such not taxable, it cannot be that the legislature intended by the words under consideration to save them from an assessment which might otherwise have been supposed to be laid upon them.

The other questions in the case, as to which there is no disagreement between Mr. Justice COLE and myself, will be considered by him in his opinion.

I think it follows that the lot owners must pay the expense of the pavement in front of the lots on the street, averaged according to the provisions of the charter, and possibly (though of this I express no opinion) with interest at the rate of seven per cent. from the publication of the curative act, March 9, 1871. They are not, in my judgment, required to pay anything for paving the intersections nor the crosswalks, which are probably included within the street intersections.

I think the order of this court on such appeal should be as stated at the commencement of this opinion.

COLE, J.     In the former opinion it was held that what are termed crosswalks at the street intersections constituted, in fact, a portion of the main pavement, and were to be paid for at the expense of the adjoining lots abutting on the street improved, and not out of the ward fund. The counsel for the city freely concede that if the elevations which are made in the Nicholson pavement at the street intersections are to be deemed and treated as crosswalks within the meaning of the charter, then it was wrong to include them in the assessment. For the charter is very clear and specific, that the construction of crosswalks is to be paid for out of what is known as the ward fund. Subd. 2, sec. 19, ch. 6, and sec. 2, ch. 5, of the charter. But

they argue and insist that there are really no crosswalks in the pavement. They say that the elevations at the street intersections are not crosswalks in the sense in which that term is used in the charter, because they are not distinguishable from the rest of the pavement, but all form the roadbed, which is one entire structure. This is substantially the position taken on the first argument, and which I thought was correct when I drew up the former opinion. But I am now satisfied that this view cannot be sustained, and I agree with the chief justice that the expense of the crosswalks, although they are made of the same materials as the main pavement, and are really not distinguishable from it, is not chargeable to the adjoining lots. It is a circumstance of no importance that what are called crosswalks are constructed of the same materials as the roadbed. The test is: Are these elevations used by the public for crosswalks? Are they designed to, and do they in fact, answer the ends and purposes of crosswalks? If they do, then it seems difficult to maintain the proposition that they are not as truly crosswalks within the meaning of the charter, as though they were constructed of a different material from that composing the roadbed. It is quite true that calling these portions "crosswalks," in the specifications for laying the pavement, would not make them crosswalks, unless they were in fact used and intended to be used by the public *as and for crosswalks*. But that these elevations are used for crosswalks, and answer the purposes of crosswalks, was not denied upon the argument by any one.

*Second.* I am unable to agree with the chief justice in regard to the expense of grading and paving the street intersections. The cost of this work has been assessed upon the lots and parcels of land bounded on the improvement. Is this authorized by the provisions of the charter? It seems to me that it is. The whole question turns upon the construction which is given to the last clause of subdivision 1, sec. 19, ch. 6 of the charter. This is quoted at length by the chief justice, and need

not, therefore, be repeated. According to my understanding of this clause, it directs the manner of ascertaining the expense of the work, and the mode of apportioning the expense, as follows :

1. The aggregate front length of all lots and parcels of land on both sides of the street, limited by the improvement, is to be ascertained by some competent person.

2. The front length of each lot and parcel of land bounded on such improvement, with a correct description thereof and the name of the owner, if known.

3. The common council then determines the expense of the whole work, including the expense of surveying, etc.

4. The average expense upon each foot front of lots and parcels of land on both sides of the street bounded by the improvement, excluding cross streets from the computation, is to be ascertained.

5. Each lot or parcel of land is then assessed with its proportion of the expense, to be ascertained by multiplying its number of feet front by the average expense per foot.

In other words, the object of this clause is to carry out the general policy and economy of the charter, which are to throw the entire expense of the improvement upon the lots abutting on the street in proportion to the number of feet front. Consequently the average expense upon each foot front of the lots on both sides of the streets is ascertained (the cross streets being excluded from the computation), and the amount with which each lot is chargeable is found by multiplying its number of feet front with the average expense per foot front. In arriving at the expense of the whole work to be done, the common council would necessarily have to include the expense of grading and paving the street intersections. For that would obviously be one item of the gross amount or cost of the work. And this amount divided by the aggregate number of feet front of all lots on both sides of the street within the limits of the improvement, would give the average expense of each foot. And this sum resulting from the division, when multiplied by

the. number of feet front of each lot, will give the amount that such lot is chargeable with under the charter. This is a departure from the rules and principles of some city charters, where each lot is chargeable with the expense of the improvement in front of it. That system of course imposes a greater burden on some lots than upon others of the same frontage. But the policy of this provision seems to be to impose the same burden upon lots having an equal number of feet front. It doubtless operates less inequitably than a provision which imposes upon each lot the expense of the work in front of it. But I cannot doubt that the intention was to make the lots abutting upon the street pay the expense of paving the street intersections. And I am further strengthened in this conclusion by the consideration that we were not referred to any provision of the charter which authorizes the imposition of a tax to defray the cost of such an improvement, although the charter contains full provisions for raising money for other specified purposes.

It is suggested that the language of the proviso clearly shows that it was not the intention to throw upon the lots abutting upon the street the expense of paving the street intersections. But I draw from it no such inference. The proviso in effect enacts, that when a lot owner within the limits of the proposed improvement has already made an improvement in front of his lot similar in kind and character to the one proposed, then his lot shall be excluded in the computation and assessment for the expense of the work. The effect of this, it is said, under my construction of the previous clause, is to throw upon the other lots the cost of paving the street intersections. This would undoubtedly be the result in that case. But it is obvious from the nature of the case that no expensive improvement — such as paving, repaving, planking or macadamizing a street — would ever be likely to be done by lot owners in detail. Such work must be done on some general plan. If the work proposed was such as curbing, and some lot owners had already made the

improvement in front of their lots, the expense of curbing the street intersections would not essentially increase the tax upon the other lot owners.   Besides it is manifest that the system of improving the streets which is adopted by the charter does not in all cases distribute the burdens equally.   And no system which has ever been devised for assessing either a general or local tax ever bears equally and justly upon all.   The principle of imposing a tax according to frontage is far from distributing the burden equally.   Lots of an equal number of feet front differ widely in value according to their advantages for business and the improvements upon them.   And yet no account is taken of these things when imposing a tax upon lots for street improvements.   The legislature, in framing the charter upon this subject, doubtless well understood that the rules adopted did not secure a just and fair distribution of the burden of improving the streets ; and therefore the argument attempted to be drawn from the proviso to show that the construction placed by the city attorney upon the previous clause is inadmissible, seems to me to have no weight.

*Third.*  These remarks, together with what is said in the previous opinion, dispose of all the questions properly before us on these appeals.   The rehearing was granted because we were in doubt in regard to the decision which charged the lots abutting on the streets with the expense of laying the pavement at the street intersections, and also with the expense of the cross walks.   It will be seen that the chief justice and I differ in our construction of the charter relating to the expense of laying the pavement at street intersections, but agree upon the other point.   We also agree upon the other questions discussed upon the re-argument, upon which an expression of our views was solicited by counsel on both sides for the guidance of the court below in proceeding with the cause.   Under the circumstances which have attended this litigation, I have thought we ought to comply with this request, notwithstanding my gen-

eral unwillingness to express an opinion which may be justly criticised as extra-judicial. I shall content myself with a brief remark upon the questions suggested.

There has been no re-assessment of these taxes since the curative statute of 1871 took effect. It is possible that no re-assessment will be found necessary, and that the circuit court will be able, upon evidence submitted, to ascertain the amount of taxes which the plaintiff is justly liable to pay under the provisions of the charter as a condition of enjoining the collection of the excess. If so, we agree that the plaintiff should only be required to pay that amount, with possibly interest thereon at the rate of seven per cent., from March 9, 1871. The charter provides that if any tax levied shall be set aside by an order of court, the common council shall forthwith re-levy and re-assess the same, with interest thereon at the rate of seven per cent., from the date of the warrant for the collection of the tax so set aside. Sec. 22, ch. 7. The irregularity in the proceedings of the common council was validated by the passage and publication of ch. 243, March 9, 1871 ; and we do not think the plaintiff should be required to pay any interest prior to that time. This is surely giving to the healing statute all the force and effect which it was intended to have, and all which in equity and justice should be applied to it.

Another question was, whether this curative act legalizes the warrant and assessment roll in the hands of the treasurer, and makes good the notice given by him under sec. 5, ch. 7, requesting the tax payers to forthwith make payment of their taxes. We do not think it does. The act does not upon its face profess to do these things and there is no reason for giving it a strained construction. When the notice was given by the treasurer in 1869, of course the tax was invalid. The plaintiff was not in default for omitting to pay what was not legally due. Another tax warrant must be issued and another notice published, before interest at the rate of 12 per cent. as provided by section 9 of ch. 7, will begin to run. It was not seriously

claimed that the 12 per cent. given by section 20 of this chapter in the way of a penalty could be collected.    The legislature has not attempted to impose a penalty even, if it could do so. . I agree with the chief justice in the order to be made in this court

*By the Court.* — That part of the order of the court below from which the city appeals, is affirmed; and that part of said order from which the plaintiff appeals, is reversed.

LYON, J., did not sit in this case, having tried the cause at the circuit.