PIER and another vs. THE CITY OF FOND DU LAC, imp.

CITIES: STREET IMPROVEMENT: STREET CERTIFICATES. (1, 3, 4) *City charter construed. Crosswalks. Charter remedy for improper assessments : how limited, and when not exclusive.*

EQUITY: CLOUD ON TITLE. (2) *Street certificate, when a cloud.* (5) *Statutory action to remove cloud : Pleading.* (6, 7, 9) *Bill* quia timet, *independent of statute : when and in whose favor it lies : relief given.* (10) *When city a proper party defendant.*

EJECTMENT. (8) *When the statutory action lies against one not in possession.*

1. A city charter provides that where public improvements are chargeable on the lots benefited, " all such improvements *on cross streets and alleys* " shall be paid for out of the funds of the ward, etc. *Held,* that, under this provision, where a street is improved across another street, the cost of the improvement within the line of such other street, *including the crosswalks,* is chargeable to the proper ward.

2. A certificate of the city board of public works, regular in form, for

AUGUST TERM, 1875.        471

Pier and another vs. The City of Fond du Lac, impleaded.

work done in grading and paving a street adjoining plaintiffs' lot, includes in fact work properly chargeable to the ward, but that fact does not appear from the certificate. *Held*, that as the certificate, under the charter, is a lien upon the lot, and a cloud upon plaintiffs' title thereto, they are entitled (after paying the amount actually chargeable to the lot) to some adequate remedy to remove the cloud.

3. The charter gives a lot-owner the right of appeal to the common council, and thence to the circuit court, from the decision of the board of public works "as to the amount of the benefits by them adjudged to accrue to him by reason of any improvements charged against his lot." *Held*, that it is doubtful whether such appeal is not designed merely to correct errors of judgment in the board, and whether it is available to correct an assessment which the board had no jurisdiction to make.

4. Upon all the provisions of the charter relating to such an appeal (under which the lot-owner may be compelled to pay the full amount of the assessment, or have his lot sold and conveyed for nonpayment, before his appeal is finally determined), this court is of opinion that the right to such an appeal is not an adequate remedy to the lot-owner, and was not designed to be *exclusive*.

5. In an action under sec. 29, ch. 141, R. S., the complaint must show that plaintiff is in the actual possession of the premises to which the action relates.

6. But one who has the legal title to land, though not in the possession, may, independently of the statute, maintain a suit in equity (in the nature of a bill *quia timet*) to remove a cloud upon his title, when the invalidity of the hostile claim cannot be shown by any record, but must be proven by evidence *aliunde*. And in such suit the court may decree the reformation, surrender or cancellation of deeds and other instruments affecting title, or the reformation or cancellation of records, and the execution of deeds or releases.

7. *Gunderson v. Cook*, 33 Wis., 551, as to the necessity of actual possession in order to maintain the bill *quia timet* independently of the statute, overruled; and *Shaffer v. Whelpley*, 37 id., 334, criticised.

8. Ch. 141, R. S., provides, in reference to the action at law to recover possession of real property, that if the premises are not actually occupied by any person, the action must be brought against some one exercising acts of ownership on them, "or claiming title thereto or some interest therein, at the commencement of the action;" and it requires the complaint to state that the defendant unlawfully *withholds the possession* from the plaintiff. *Held*, that the title or interest claimed by defendant which will sustain such an action, must be one which, if valid, would give him a *possessory* right in the premises;

and the action will not lie against one not in possession, who has only an apparent *lien* upon the land, without color of possessory right.

9. Plaintiffs, having therefore no adequate remedy at law against the certificate above described, may maintain a suit in equity to have it cancelled.

10. In such an action, the unpaid balance on said certificate being payable from ward funds if plaintiffs are successful, and the ward being incapable of becoming a party, the city is a proper party defendant.

APPEAL from the Circuit Court for *Fond du Lac* County.

The complaint alleges that on the first day of January, 1874, and from thence hitherto, the plaintiffs were and are the owners in fee of a certain lot therein described, situated on the corner of Forest and Macy streets in the defendant city ; that Forest street, between Main street and the east branch of the Fond du Lac river (which includes the portion thereof in front of plaintiffs' lot and across Macy street adjacent thereto), was graded and paved with a wooden block pavement, by order of the common council and under the supervision of the board of public works of said city ; and that the petition for such improvement required by the city charter (P. & L. Laws of 1868, ch. 59, subch. XIII, sec. 3) was duly signed by the requisite number of the owners of lots fronting on such improvement, and presented to the common council. It also alleges that the work was let to the lowest bidder, one Wolf. It states in detail all the proceedings in the matter ; and these are conceded to have been in strict accordance with the requirements of the city charter. It further avers that, after the work was completed, the board of public works issued a certificate to Wolf, the contractor, in the form required by the city charter (subch. XIII, *supra*, sec. 9, as amended by ch. 501, sec. 11, P. & L. Laws of 1871), stating that Wolf had graded and paved 97 $\frac{77}{100}$ square yards in front of the plaintiffs' lot, at an expense of $1.03 per yard, amounting to $100.70, and that such sum was chargeable to said lot ; that in fact the amount of such grading and paving done in front of said lot was only 53 $\frac{26}{100}$ yards,

and that the remaining $44\frac{44}{100}$ yards charged thereto is within the limits of Macy street where the same crosses Forest street, and covers that part of said streets used as a crosswalk; that Wolf transferred the certificate to the defendants Hamilton and Finley, who afterwards deposited the same with the defendant Perry, the city treasurer, and that afterwards the latter, pursuant to the requirements of the section of the city charter last above cited, "gave notice in the official paper of said city that such certificate, among others, had been issued, stating in said notice that the, said lot of these plaintiffs was liable for the payment of the said sum of $100.70 mentioned in said certificate, and that the same was a lien upon said lot, as also required by the provisions of said section;" that more than thirty days have elapsed since the publication of said notice by the said treasurer; and that within thirty days thereafter the plaintiffs paid to said treasurer $54.93 (which was the cost of grading and paving $53\frac{86}{100}$ square yards in front of their lot), as the full amount properly chargeable thereon, and requested the treasurer to cancel the certificate, which the latter refused to do.

The relief demanded is, that the defendant city, its officers and agents, be perpetually restrained from assessing the sum unpaid on the certificate, upon the plaintiffs' lot, or from entering the same upon the next or any other tax roll of said city as a tax upon said lot; that all the other defendants be perpetually enjoined from selling, assigning or transferring said certificate; that as to the unpaid portion thereof, the certificate be declared void and of no effect as a lien upon the plaintiffs' lot; and that the defendant treasurer be directed to deliver up the same for cancellation. There are also prayers for a temporary injunction, and for general relief.

The defendant city demurred to the complaint, as not stating facts sufficient to constitute a cause of action; and appealed from an order overruling the demurrer.

*Norman S. Gilson*, for appellant:

1. There is no question that the expense of building sidewalks on the north and west sides of the lot are a proper charge; yet it is claimed that the crosswalks opposite the sidewalks to the center of the street, cannot be charged to the lot, although a part of the main pavement of the street, and not distinctly built as crosswalks. The case of *Blount v. Janesville*, 31 Wis., 648, is no authority for this; as the provisions of the Janesville charter are essentially different from ours. Sec. 3, ch. 13 of appellant's charter, provides that the expenses of the improvement to the center of the street shall be chargeable to the lots fronting the street. Sec. 5 provides that improvements across streets are to be paid for out of the ward fund; but it does not specify that crosswalks are to be so paid for, and it must be held to refer to the street intersections merely. 2. If the board of public works committed an error in assessing too large a sum upon plaintiffs' lot, an adequate remedy at law is provided by an appeal to the common council, and from that to the circuit court, where a trial by jury may be had. P. & L. Laws of 1871, ch. 501, secs. 8 and 10, amending the charter. 3. The complaint does not allege that plaintiffs are in possession of the lot. Only persons who have the possession as well as the legal title to the land, can maintain a suit *quia timet* against one setting up claim of title thereto. *Lee v. Simpson*, 29 Wis., 333; *Wals v. Grosvenor*, 31 id., 681; *Gunderson v. Cook*, 33 id., 551. In *Milwaukee Iron Co. v. Town of Hubbard*, 29 Wis., 51, and also in *Hamilton v. Fond du Lac*, 25 id., 490, the complaint alleged that the plaintiff was in the actual possession and occupancy of the real estate in question. The authority for bringing such actions must be derived from the statute. Tay. Stats., 1671, § 29. Before its adoption, title might sometimes be quieted in chancery, by a bill of peace, or bill *quia timet;* but only under peculiar circumstances, as after repeated trials at law, etc. To remedy the defects and omissions in the relief thus granted by chancery, the statute was enacted as a substitute. It is first found in Wisconsin as § 64, p. 289, Terr. Stats.

of 1839, entitled "An act to prescribe the mode of proceeding in chancery;" then as sec. 34, ch. 84, R. S. 1849, entitled "Of courts of chancery and proceedings therein;" and is now transferred to ch. 141, R. S. 1858, under the head of "Actions for the recovery of real property and to quiet the title thereof." Thus it appears that in this state possession has always been regarded as requisite to enable one to maintain a suit in equity to remove a cloud or quiet the title to real estate. The statute is an enlargement in many respects of the remedies attainable by a bill *quia timet,* or bill of peace. Before its adoption, plaintiffs could not have maintained a bill of peace, even if in possession; for that was a remedy designed to suppress useless litigation and prevent a multiplicity of suits, and was not maintainable unless the plaintiff had established his right at law, except where the parties were so numerous, or set up their claims in such form, as to render a trial at law impracticable. Adams' Eq., 199, 202. Another exception contended for, but generally disallowed by the chancellor, was when the plaintiff was in possession, and the defendant failed to bring any action, the plaintiff having therefore no opportunity to establish his right at law. In Ohio it is held that a statute similar to ours was expressly designed to supply this omission. *Collins v. Collins,* 19 Ohio St., 468. It substituted the plaintiff's possession for the establishment of his right by trials at law. 6 Wall., 402; 15 Cal., 259; 25 id., 437; 13 Ill., 201: 23 Ark., 746; 31 Tex., 448; Davies (U. S.), 242.

*Taylor & Sutherland,* for respondent, as to the illegality of the tax so far as it included the crosswalks, cited the charter of the city, ch. 13, secs. 2, 3 and 5; *Blount v. Janesville,* 31 Wis., 662. To the points that an illegal tax, being a lien upon the land, constitutes a cloud upon the title, and that equity will interfere before the sale to declare the assessment void, and restrain the collection thereof, they relied on *Milwaukee Iron Co. v. Town of Hubbard,* 29 Wis., 51.

LYON, J.   1. It is argued by the learned counsel for the appellant, that, although the complaint may state a cause of action against the other defendants, it states none against the defendant city, and hence that the city is an improper party, and its demurrer to the complaint ought to have been sustained.

If the plaintiffs prevail in the action, the amount unpaid on the certificate of assessment is payable by the ward in which the improvement is located.   Sec. 3, ch. 13 of the city charter (P. & L. Laws of 1868, p. 128), authorizes the proper city officers " to construct and build crosswalks at the expense of the wards;" and sec. 5 of the same chapter provides that, "In all cases where public improvements or works of any kind are chargeable by virtue of this chapter on lots or any parcel of land benefited thereby, all such improvements across streets and alleys shall be made and paid for out of the funds of the proper ward in proportion to the width of the street of alley." P. & L. Laws of 1868, p. 130.   Hence, the ward which includes within its limits the intersection of Macy and Forest streets, is directly interested in this litigation.   But the ward cannot be a party to an action.   Its interests can only be protected by making the city, of which it is a part and which has control of its affairs, a party to the suit.   For these reasons, without stopping to inquire whether there are not others equally valid, we must hold that the city is properly joined as a defendant.

2. If the material averments of the complaint are true (and they stand admitted by the demurrer), it is clear that the certificate of assessment, as to the unpaid portion of the assessment, is void under secs. 3 and 5, ch. 13 of the city charter, above quoted.   The meaning of those sections is, undoubtedly, that where a street is improved across another street, the cost of the improvement in the line of such other street (which includes the crosswalks), is chargeable to the proper ward, and not to the corner lots.   The improvement of Forest street, the cost of which is the subject of this controversy, is within the line of

Macy street, and is therefore chargeable to the ward, and not to the plaintiffs' lot. See *Blount v. Janesville*, 31 Wis., 648.

3. By the provisions of the charter of the defendant city, the certificate of assessment which the plaintiffs seek to have adjudged void and cancelled, is an apparent lien upon their lot. Although void in fact, it is not void on its face, and is a cloud upon the plaintiffs' title to the lot. It is too clear for argument or doubt that the law furnishes some adequate remedy to remove the cloud. Were this otherwise, it would be a reproach upon our jurisprudence.

4. The city charter gives a lot-owner the right of appeal to the common council, and from thence to the circuit court, from the decision of the board of public works, "as to the amount of the benefits by them adjudged to accrue to him by reason of any improvements charged against his lot or parcel of land." Sec. 4, ch. 13, as amended by sec. 10, ch. 501, P. & L. Laws of 1871. It is claimed that the remedy of the plaintiffs is confined to such appeals, and *Church v. Milwaukee*, 31 Wis., 512, is cited to sustain the position. In that case the right of a person whose lot had been injured by a change of the grade of a street in Milwaukee, to recover damages therefor, was denied by counsel, because, as it was claimed, the charter of that city provided for appeals similar to those given by the charter of Fond du Lac. It was held that the charter of Milwaukee did not give an appeal in such cases. The court admit, however, that, where the aggrieved party has the right to such appeals, there is much force in the position that it is his only remedy for the recovery of his damages. This is not an action at law to recover damages, but a suit in equity to remove a cloud from title, and it is obvious that the intimation of the court in *Church v. Milwaukee* is of no importance here.

It may well be questioned whether on the appeals given by the charter of Fond du Lac anything more than mere errors of judgment can be corrected. In this case the assessment complained

of was not the result of a mere error of judgment, but it was made without authority of law. The board of public works had no jurisdiction to make it. We doubt whether the appeals given by the charter are available to correct mischiefs resulting from such acts.

But, however this may be, there are provisions contained in the city charter which convince us that the legislature did not intend to restrict the remedy of the lot-owners to such appeals. Before an appeal under the charter can be taken to the circuit court, the appellant, with two sureties (who, if required, must justify their pecuniary responsibility), must give a bond to the city in the sum of $500, conditioned to pay the costs which may be adjudged against him on the appeal. Then an intermediate appeal to the common council (which is not a judicial tribunal) must be taken, before the matter can be appealed to the circuit court. Moreover it is expressly provided that the appeal to the circuit court· "shall not affect the right of the contractor or of his proceedings in reference to his contract, but the certificate against the lot or parcel of land in question shall be given as if no appeal had been taken ; and in case the appeal shall succeed, the difference between the amount charged in the certificate and the amount of benefit finally adjudged, shall be paid to the appellant out of the proper ward fund, but not until he shall have done the work in question, *or have paid the certificate issued for doing the same.*" See section last above cited. Pending the appeal, it thus appears that there can be no stay of proceedings, and before it is determined the certificate of assessment may be issued. Unless the appellant pays the full amount of the assessment, no good reason is perceived why his lot may not be sold and conveyed for nonpayment thereof. Thus the lot-owner, after appealing to the council, giving the required bond, and appealing to the circuit court, may be successful on his last appeal, and yet at the close of the litigation, unless he has in the meantime paid the full amount of the assessment which he has successfully resisted, he may

find that he has lost his land, or that he is driven to an action to clear his title thereto. We cannot hold that the right to such appeals is an adequate remedy to the lot-owner, or that the legislature intended that it should constitute his exclusive remedy.

5. Lastly, it is claimed on behalf of the appellant that the complaint is fatally defective because it is not averred therein that the plaintiffs were in possession of the lot affected by the certificate of assessment, when the action was commenced; and the cases in this court holding such an averment essential in actions brought under sec. 29, ch. 141, R. S., are cited to sustain the position. The statute is as follows: "Any person having the possession and legal title to land may institute an action against any other person setting up a claim thereto, and if the plaintiff shall be able to substantiate his title to such land, the defendant shall be adjudged to release to the plaintiff all claim thereto, and to pay costs; unless," etc. If this action can only be sustained under the statute, the position is well taken; for in such case actual possession by, and legal title in, the plaintiffs are essential conditions to a cause of action, and the existence of these conditions must be averred in the complaint. *Lee v. Simpson*, 29 Wis., 333; *Wals v. Grosvenor*, 31 id., 681; *Gunderson v. Cook*, 33 id., 551; *Shaffer v. Whelpley*, 37 id., 334. Hence we must determine whether the action can be upheld independently of the statute.

Courts of equity have inherent jurisdiction of actions to prevent or remove clouds on title to land, and have constantly exercised it from a very early period. But unless it was made to appear that the cloud complained of was an apparent incumbrance of the land, rendering a resort to evidence *aliunde* the record necessary to show that it was invalid, the court would refuse relief. *Moore v. Cord*, 14 Wis., 213; *Gamble v. Loop*, id., 465.

The remedies given in such actions are broad and ample. To give effectual relief, the court will decree the reformation,

surrender or cancellation of deeds and other instruments affecting the title, or the reformation or cancellation of records and the execution of deeds or releases; in short, it possesses power to decree adequate relief, and to enforce full execution of its judgment. Whether, under our constitution, the legislature may cripple the court in the exercise of that power, is a question not necessary to be here considered.

Manifestly the remedy given by the statute, unaided by the inherent equity powers of the court, is not so comprehensive. Under the statute alone, the court can only adjudge that the defendant execute a release to the plaintiff as therein provided. Cases frequently arise wherein it is essential to full relief that records, deeds or other instruments affecting the title to land be reformed or cancelled, or that a perpetual injunction be granted, and wherein the relief prescribed by the statute would constitute a most inadequate remedy. In such cases, unless the general equity powers of the court, as they existed before the statute, are available, the injured party must go out of court without full redress for the wrong he has suffered. We cannot believe that the legislature, by the enactment of the statute under consideration, intended any such result, but rather, that it intended to provide an easy remedy in a class of cases which are not within the general equity jurisdiction of the court. The statute in terms gives the action to a person who has the possession and legal title to land against any other person setting up a claim thereto. We have already seen that those conditions alone are not sufficient to maintain an action *quia timet* independently of the statute, but that there must exist an apparent incumbrance upon the land. No attempt will here be made to define the limits of the statutory action. It is sufficient to say that, in our opinion, if the complaint states what would have been a good cause of action in equity before the statute, it states what is now a good cause of action in equity. The distinction between the statutory action and the action *quia timet* as it exists independently of the statute, was

Pier and another vs. The City of Fond du Lac, impleaded.

recognized by this court in the cases of *Gamble v. Loop, supra*, and *Maxon v. Ayers*, 28 Wis., 612.

In those actions *quia timet* which may be brought independently of the statute, we find no authority for holding that possession by the plaintiff is essential to the cause of action; and, unless an averment of such possession is necessary to show that the plaintiff has no adequate remedy at law, no valid reason is perceived why it should be required. True, it is said in the opinion by Chief Justice DIXON, in *Lee v. Simpson, supra*, that "It is only the person having the possession and legal title to the land, who may institute his suit *quia timet* in equity against any other person setting up a claim of title thereto." p. 337. But the learned chief justice is there speaking of an action under the statute, and his remarks have no application to those actions *quia timet* which may be brought independently of the statute. We conclude, therefore, that the failure to aver that the plaintiffs were, when the action was commenced, in possession of the lot against which the certificate of assessment was issued, is not necessarily fatal to the complaint.

The question still remains, however, whether the complaint states a cause of action properly cognizable in a court of equity. If it sufficiently appears therefrom that the plaintiffs have no adequate remedy at law, doubtless it states such a cause of action. If the plaintiffs have an adequate remedy at law, it is by virtue of ch. 141, R. S., entitled "Of actions for the recovery of real property." Sec. 3 (which contains the controlling provision on the subject) is as follows: "If the premises for which the action is brought are actually occupied by any person, such actual occupant shall be named defendant in the complaint; if they are not so occupied, the action must be brought against some person exercising acts of ownership on the premises claimed, or claiming title thereto or some interest therein, at the commencement of the action."

The complaint being silent on the subject, it will be assumed for the purposes of the case, that the lot upon which the as-

sessment was made, was unoccupied when the action was commenced. Such is probably the legal presumption. It does not appear that any of the defendants have exercised any acts of ownership on the lot, or claim any title thereto. If, therefore, the plaintiffs can maintain ejectment for their lot, it is because the holders of the certificate of assessment claim "*some interest*" therein, within the meaning of the statute. That they have an apparent interest therein by virtue of such certificate, and claim that the same is a valid subsisting interest, appears from the complaint. But, were the interest a valid one, it would not affect the plaintiffs' right to the possession of their lot. It would be a mere lien or incumbrance, which would confer no possessory right whatever upon the owners of the certificate. The statute last cited does not change the nature of the action of ejectment, although it has extended its operation. As at the common law, it is still a possessory action. The plaintiffs' right to the possession of the premises claimed, and an invasion of that right by the defendant, are still essential conditions to its maintenance. This is proved by the requirements of sec. 5, ch. 141, to the effect that the complaint shall set forth (among other things) that the plaintiff is entitled to the possession of the premises claimed, *and that the defendant unlawfully withholds the possession thereof from him.* Considering secs. 3 and 5 together, it seems quite plain that the legislature intended to render a claim of title to, or some interest in, unoccupied lands, equivalent to a disseizin, or, at least, to an actual occupancy of the lands by the person setting up such claim. It would be absurd, however, to impute such intent in a case where the interest claimed (as in this case) does not at all interfere with or affect the plaintiffs' right of possession. Had the legislature so intended, most assuredly the plaintiff would not have been required to aver that the defendant "unlawfully withholds the possession" from him.

We conclude that the title or interest mentioned in sec. 3 means a title or interest which, if valid, will entitle the owner

thereof to the possession of the premises, or at least to some possessory right therein. For example, should the plaintiffs' lot be sold for nonpayment of the assessment, and a deed thereof be executed to the purchaser, if the premises remained unoccupied, ejectment would lie against the grantee claiming title under such deed; because, if the deed were valid, such grantee would be entitled to the possession of the lot, and hence his claim is a menace or denial of the plaintiffs' right to the possession thereof. But while the interest claimed is by virtue of the certificate alone, it must be held that ejectment will not lie against the claimants, and hence, that the plaintiffs have no adequate remedy at law.

It is believed that all of the decisions of this court in cases involving the questions here determined are in accordance with the views above expressed, although it must be conceded that there is a failure in some of the opinions to make the proper distinction between actions which can be sustained only under the statute (R. S., ch. 141, sec. 29), and those which may be upheld independently of the statute. *Gunderson v. Cook, supra*, is one of the cases liable to this criticism. *Shaffer v. Whelpley, supra*, which probably belongs to the same class, was correctly decided, because in that case, if the premises were unoccupied (as they doubtless were), ejectment was the proper remedy, and the demurrer to the complaint in equity was correctly sustained. In the light of our later investigations, however, we should now be better satisfied with the case had the decision been placed upon that ground.

Upon the whole case, and after the most careful consideration, we are impelled to the conclusion that the complaint states a good cause for equitable relief against all of the defendants, and hence that the demurrer thereto was properly overruled.

*By the Court.* — Order affirmed.