## BASS AND ANOTHER V. FONTLEROY AND OTHERS.

Counties, county seats and county buildings are under the control of the Legislature, to alter or abolish at pleasure; so, it seems, are bridges and ferries.

Where the Legislature incorporated a city, and by the same Act relinquished to the corporation thereof and their successors in office, lands included in the limits thereof, in trust for the use and benefit of said city, with power to sell and apply proceeds to the erection of a jail and courthouse for the use of the county of Cameron, the balance to be applied to the purposes of education, within said city, and for no other purposes, and the Legislature afterwards repealed the Act of incorporation, it was held that the former Act did not confer a vested right upon the citizens of said city (nor upon the county, it seems) to the erection of the courthouse and jail out of said fund; that until the trust had been executed, it was competent for the Legislature to change or abolish it; that the contingent trust for educational purposes, being a public charity, while unexecuted, remained subject to the same legislative power; and that both trusts were extinguished by the repeal of the Charter of incorporation, so that a trustee could not be appointed by the Court to administer them.

Where an application is made to a Court to appoint a trustee, any person who claims the property, alleged to be trust property, as his own, has a right to appear and become a party; and to resist the appointment, on the ground that there is no trust; and, if the decree be against him, he has a right to appeal.

Kemper v. Corporation of Victoria (3 Tex. R. 159) explained; and herein, of the difference between a legislative grant, saving rights of third persons, and one which contains no such saving clause.

Appeal from Cameron. The District Attorney, at the relation of sundry citizens of Cameron county, filed an information, setting forth the incorporation and grant to the city of Brownsville; the repeal of the Charter; the continued existence of the charitable trust, and the necessity of the appointment of a trustee to take possession of the trust estate and to administer it. The relators then prayed for such appointment of a trustee with power to sell the trust property and apply the proceeds to the erection of a courthouse and jail and the balance for the purpose of education.

On the day after the filing of this information, Elisha Bass and Robert H. Hord, appeared as intervenors, alleging themselves to be the owners of lands within the tract designated in

the information, and protesting against the action of the Court on the application of the relators.   They also filed special exceptions to the sufficiency of the information and to the jurisdiction of the Court.

On a succeeding day, by leave of the Court, they amended this answer by filing an amendment setting forth an adverse title vested in them previous to the Act of incorporation of the city of Brownsville, and derived both from locations and surveys on headright certificates, and from a grant from the Crown of Spain in 1781, with mesne conveyances to them. This answer and amended answer were excepted to by the District Attorney on the ground that Bass & Hord had no right to appear in this suit: the exception was sustained and the answers stricken out, Bass & Hord being received, however, as *amici curiae*, and allowed to introduce evidence to protect their own interests.   After the testimony was closed, the Court of its own motion reconsidered this last order so far as to allow the answers to stand.   The intervenors having applied for a jury, the Court refused the application, and directed the matter to be heard before itself alone.   A decree was entered affirming the trust and its continuance, appointing trustees, ordering that they " stand seized " of the fee of the trust property and that they administer it under the orders of the Court or of the Judge in vacation, and pay over the money accruing therefrom to the Court, the Judge or any other person designated by him.

An appeal was taken by Bass & Hord.   A motion was made to dismiss the appeal, on the ground that the appellants were not parties in the Court below, and on the ground that the judgment was not such an one as could be appealed from.

*Allen & Hale*, for appellants.*   I. The Act of incorporation, passed January 24th, 1850, so far as its subordinate object—the grant of land—is concerned, was unconstitutional

---

* The arguments of the attorneys of both parties, on the merits of the claim of the appellants, are omitted.—(REP.)

and void, being in contravention of the 24th Section of the 7th Article of the State Constitution. This section is not merely directory, it is mandatory.

And the only question is whether a grant of land is not a distinct object, from a charter of incorporation.

II. The Act of 1853, repealing the Act of incorporation, rescinded also the grant; and with that, the trust estate terminated, and could not be revived by the appointment of a new trustee. That this was the letter and intention of the Act of 1850, cannot be doubted. Looking at the reservation in favor of private rights, contained in the Act of 1850, and the confirmation of the Espiritu Santo Grant, made by the law of the 10th of February, 1852, it is impossible to resist the conclusion that the Legislature of the last year were satisfied that their former grant was inoperative, and that it was useless and dangerous to allow it to remain as the source of litigation. But it is contended, that, be the meaning of the repealing Act what it may, it could not constitutionally divest vested rights or impair the obligation of a contract. This position raises two questions—were any rights vested? and was any contract made between the State and the city?

The phrase "vested rights" implies some person in esse in whom the rights reside: and that person must not only be in existence, but certain and definite. There must, in short, be some one to hold and enjoy the benefit conferred. When the city of Brownsville ceased to exist, it was impossible to designate any particular individuals who became entitled to claim the privileges conferred by the grant. The whole community, indeed, might be interested, but the community is not a political person, nor can it take or hold, either in law or equity, a charitable grant. So vague and general a right cannot be said to be vested, and certainly it is not a right of property, in the sense of the 16th Section of the first Article of the State Constitution. (Baptist Ass. v. Hart's Exr's, 1 Wheat. 1.)

Nor was the law of 1850, a contract between the State and

the city or the citizens of Brownsville. A public political corporation is merely the agent of the State in the administration of its power. The delegation of authority does not confer an independent sovereignty or a separate political existence. A county, a town, a city, are merely subordinate instruments made for convenience and the division of labor, and subject still to the will of the State to throw them aside when their use ceases. Any other construction would lead to the indefinite subdivision of the State ; and the creation of permanent monopolies of power and a multitude of petty despotisms.

The case of East Hartford v. Hartf. Br. Co., 10 How. 532, is quite conclusive ; and sums up all the preceding authorities.

*W. W. Dunlap,* for appellees. The petition did not pray that parties be made to the information. It proposed to have the matter considered by the Court *ex parte,* for the sole and only purpose of procuring a party authorized by law to prosecute and carry out an unexecuted charity.

As no parties were asked to be cited, it is submitted that none had the right to come in and demand a hearing. (Story's Eq. Pl. p. 274, Sec. 230.)

The " *amici curiae* " could not have been injured by the result of an examination to which they were not parties in some form known to the law.

There was no error therefore in stricking out all the papers filed by them and in treating the information, as it was treated by the Court, as *ex parte.*

The refusal of the Court to grant a hearing before a jury was not erroneous.

There was no issue to try. The Court had determined it to be *ex parte.* The exceptions, protest and answer were struck out, and Messrs. Bass & Hord were permitted by the Court to produce any evidence they might see fit to offer for the purpose of proving if they could that there was no trust to be executed.

Here was no issue. It was a simple examination, and these appellants were admitted to appear as "*amici curiae*."

The grant is sufficiently certain, (see page 6 of opinion of Judge Arrington, Sec. 2, and the authorities there cited,) and could not be repealed. (6 Cranch, 87 ; 2 Cond. R. 321 ; Dart. College v. Woodward, 4 Wheat. 518.) The Legislature did not seek to repeal the grant. It could not repeal it by implication. This Court in Rogers v. Watrous, 8 Tex. R. 62, says "the law does not favor repeals by implication." There was therefore sufficient shown to the Court to authorize, if not demand, the appointment of a trustee to determine the extent of those rights.

*R. Garland*, also, for appellees.

LIPSCOMB, J. On the 24th of January, A. D., 1850, the Legislature of the State of Texas passed an Act incorporating the city of Brownsville, as follows, i. e. "The citizens of "Cameron county of the State of Texas, residing within the "limits of that Section of the territory, situated and lying on "the left margin of the Rio Grande, in the county of Cameron, "aforesaid, formerly a part of the town tract of four leagues "of land of the city of Matamoros in the Republic of Mexico, "are hereby declared a body politic and incorporate by the "name and title of the city of Brownsville. And all the right "title and interest of the State of Texas in and to all the land "included in the said tract, that was owned by the town of "Matamoros on the 19th day of December, 1836, shall be "and is hereby relinquished to the corporation of Brownsville "and their successors in office, in trust for the use and benefit "of said city ; provided this Act shall not impair private "rights. Said corporation shall have power to sell and alien- "ate any portion of the lands owned by said corporation, and "appropriate the proceeds thereof to the erection of a substan- "tial jail and courthouse for the use of the county of Cam- "eron ; and the balance shall be appropriated for the purpose

"of education, within said city, and for no other purposes."
This charter was repealed by an Act of the Legislature, on the
24th January, A. D., 1852. After the repeal of the charter,
an information was filed by the District Attorney, praying the
Court to appoint a trustee to carry out and execute the trust
conferred on the corporation of Brownsville. Messrs. Hord
& Bass made opposition to the appointment of a trustee, claim-
ing to be the owners of the land, alleged to be trust property.
The Court refused to receive evidence of their title, or to allow
a trial of the same by a jury; but adjudicated the title *ex
parte* to be trust property, conveyed by the Act of incorpora-
tion to the corporation of the city of Brownsville; and pro-
ceeded to appoint a trustee to supply the place of the extin-
guished corporation; and vested, by its decree, the land claim-
ed, in fee to the said trustee, to execute and carry out the ob-
jects of the trust. Bass & Hord appealed.

The case has been argued with great ability, and we regret
that the short time allotted to us, and the pressure of other
business prevents our giving an extended examination of the
arguments of the counsel on both sides, and the authorities
referred to by them.. We believe, however, that the main
question, on which the case must depend, can be reduced to
very narrow limits.

The primary and main object of the trust, created by the
Act, was in the erection of a jail and courthouse for the
county of Cameron, in the city of Brownsville; and, second-
ary to this object, was an appropriation of the balance of the
proceeds, to the support of education within the city. If
the primary object failed, by the repeal of the Act of incor-
poration being repealed, it is difficult to perceive how the sec-
ondary one, the support of education, can be supported.—
Whether there would be any balance after the execution of the
first object, is left altogether uncertain. And if there is no
balance, there would be nothing appropriated to this second-
ary object. How is the trustee, appointed by the Court, to
determine whether there would be any balance left, after the

erection of the jail and courthouse, until those edifices have been erected. Under the decree of the Court, he seems to be charged with the whole trust, that had been conveyed to the corporation before the repeal of it, the erection of the jail and courthouse, and the application of the balance to educational purposes.

The appointment of the trustee, and vesting in him the fee of the land, are based upon the hypothesis, that the grant for a jail and courthouse created a vested right to the application of the fund to that purpose ; that the Legislature had no power to divest the grant or control it. The consequences resulting from this doctrine, would be, that a grant by the Legislature, for these public edifices, would forever preclude the Legislature from abolishing or changing the county seat, a doctrine that cannot be tolerated for a moment. If the Legislature cannot change county boundaries, and the seats of justice in the counties, or abolish a county and attach the territory comprehended in it to another county, it would be, to establish a rotten borough system, where the corporation would be sustained although the inhabitants may mostly have disappeared.— But corporations of this character are conceded by all jurists to be under the control of the Legislature, to alter or abolish at its pleasure. They are public corporations, distinguished from private. The latter alone are regarded as being founded upon and creating that kind of contract that the Legislature has no right to violate. If a private corporation has forfeited its chartered rights and privileges, the forfeiture and abolition of its charter can only be inquired into by a resort to a judicial decision. Not so, however, with a public corporation. It lives only at legislative will. This doctrine is well established by eminent jurists ; and we need not go further, however, for its support, than to the case of Woodward v. Dartmouth College, and to the principles discussed and decided in 3 How. 534.

It has, however, been contended, that admitting that the trust, so far as it refers to the erection of the jail and court-

house, was repealed by the repeal of the charter or Act of incorporation, yet so much of the trust as was to be appropriated to educational purposes, was a grant of a charter that could not be affected or defeated by the repeal of the Act. If this proposition were admitted, the difficulty in the execution of that trust, by a trustee substituted by the Court for the extinguished corporation, would not be removed. The substituted trustee, having no control of the primary object of the trust, would be powerless, for want of the means of ascertaining whether there was anything left, to be applied to educational purposes; and until the establishment of that fact, there would be nothing to support the trust, and it would therefore be void. If the trustee would have no authority to execute the trust by the erection of the public edifices, a jail and courthouse, the charter being repealed, it would seem that the trust property, conveyed by the State to the corporation for those purposes, would revert to the State, and whether these buildings should or should not ever be erected, would depend upon the legislative will.

But, to return to the charter that has been repealed, and to its legal character—if public or private. The establishment of counties, their boundaries, courthouses, jails, bridges, ferries, are all matters of public policy, dependent on the legislative will for their creation; and according to the rules laid down by the Supreme Court of the United States, in the cases of East Hartford v. The Hartford Bridge Co., 10 How. 511, and Mills v. St. Clair Co., 8 How. 569, are equally dependent upon the same will for their continued existence. It would therefore follow that the Legislature could have abolished the county of Cameron, by dividing the territory comprehended within its limits, and annexing it to other counties; that it could have changed the county seat and the law providing for the erection of public buildings. The buildings referred to, form a part of the public policy, and are required in each territorial subdivision of the State into county jurisdiction; but they are not exclusively for the use of the citizens comprehended within

88

the county boundaries, but are under the control of the Legislature, open to all others, and for their use. We believe that the Act of incorporation of the city of Brownsville, granting the rights of the State to the corporation, for building a jail and a courthouse in the said city, did not confer a vested right in the citizens therefore, either to have those buildings within their city, nor a vested right in the trust property granted for their erection ; and that until the trust had been executed, it was competent for the Legislature to change or abolish the trust; and that such was the legal effect of the repeal of the charter, so far, at least, as concerned the primary object thereof, the erection of a jail and courthouse. And I believe that it had the same effect as regards the contingent trust for educational purposes. Although that portion, if any there should be, after satisfying the first object of the trust, might be regarded as a charity, it was not a private charity, but was a public one, connected with, and dependent upon, the corporation, and was to my mind, alike under the control of legislative will, and was liable to, (and did,) fail by the extinction of the corporation, it being a public and not a private corporation. The mere fact of its being a charity, could not place it beyond legislative control, so long as the trust remained unexecuted, if it was a public charity.

There was a preliminary motion, made to dismiss this case from the docket, on the ground, that it was not a case that would admit of an appeal. From the facts presented by the transcript of the record of the proceedings in the Court below, we think differently, and believe the appellants had a right to appeal.

The decree in the Court below is final, as to the subject matter to which it relates, the proceedings upon which it is predicated ; it decrees that the title to the trust property was vested in the corporation, at the time of its extinction or repeal. It appoints a trustee, vests in that trustee the absolute fee in the trust property, subject to the trusts created by the Act of incorporation. The appellants had appeared and made

opposition to the appointment of the trustee, and offered to show that they were the true owners of the property, or land supposed to be trust property, and claimed a trial of their right by a jury. The Court refused to receive the evidence of their title, or to give them the benefit of a jury trial, but went *ex parte* into an examination of the title of the State, to the trust property at the time it was vested by the Act of the Legislature in the corporation. This examination was *ex parte*. It would seem, that after the apellants had made known and offered to interpose their title, the Court should not have undertaken to decree the legal title in fee to have been in the old corporation, and to decree that it be vested in a trustee, without giving them an opportunity to substantiate their title. True it is, that such a decree, so entered on an *ex parte* examination of the legality of the title, in favor of the trust, could not impair the validity of appellants' title ; but it is most manifest that the decree was eminently calculated to injure the appellants, by creating a doubt as to their titles being valid. The appellants may, then, have well considered, and believed themselves aggrieved by a decree ; and had a right to have it reversed. And the refusal of the Court to allow them to be made parties, was a distinct ground, on which they could claim a revision, after the final decree was entered in the Court below. The Court, however, did not stop in its opinion, with the investigation of the legality of the title, that it vested in the trustees, but proceeded to investigate, to some extent, the title of the appellants, although they had not been allowed to support its validity, and decided against its validity ; and the case of Kemper v. The Corporation of Victoria, (3 Tex. R.) is referred to as conclusive against appellants' title. We do not intend to decide upon the validity of appellants' title, but only to correct an error as to the conclusiveness of that case. The corporation relied upon a final patent and legislative grant, without the reservation of the rights of others. Kemper relied on a location of a certificate, and it was ruled that an inchoate title could not stand against a perfect grant from the

Government of Texas. And we did not decide upon what would have been the law, if the title of the corporation had reserved the rights of others ; nor do we now. For the reasons expressed, we believe the judgment of the Court below should be reversed, and it is accordingly so ordered and the case dismissed.

Reversed and dismissed.

WHEELER, J., concurred in the reversal of the judgment, and gave notice that he would deliver a separate opinion, but failed to do so.