[Opinion adopted June 24, 1884.]

---

MORRIS & CUMMINGS ET AL. V. THE STATE OF TEXAS EX REL. N. GUSSETT ET AL.

(Case No. 5162.)

1. JURISDICTION — QUO WARRANTO.— An information in the nature of a *quo warranto* sought to oust the defendants of a franchise alleged to have been usurped by them. No specific value of the franchise was alleged, but it was stated in the information that $80,000 in tolls had been collected by defendants under the franchise within less than seven years before the institution of the suit, and that tolls were still being unlawfully collected. *Held*, that in view of the character of the proceeding, the petition contained sufficient allegations of the value of the amount in controversy to sustain the jurisdiction of the district court.
2. QUO WARRANTO — ACTION.— A proceeding by *quo warranto* may be maintained against the enjoyment of a franchise claimed, whether under state legislation or municipal act, when there was absence of power to grant it.

3. SAME — COUNTY ATTORNEY.— A county attorney may institute proceedings by *quo warranto* in the name of the state to oust one from the exercise and enjoyment of a franchise not authorized by law. This case distinguished from State *v.* Paris R'y Co., 55 Tex., 76.

4. FRANCHISE — ORDINANCE — TOLLS.— The city of Corpus Christi, under act of February 16, 1854, was given the right to construct a channel between the Bay of Aransas and the Bay of Corpus Christi; to pay for it with money in the city treasury, and to borrow money if necessary, giving bonds therefor; to levy tolls on vessels passing through the channel; to refund the money used, with interest, and to pay off the bonded debt accruing for the money borrowed to execute the work. Under that act, the city of Corpus Christi employed certain parties to do the work, and afterwards the state granted the employees sixteen sections of land per mile of channel to be constructed. After this the city, by consolidated ordinance, provided for issuing to the same employees $500,000 in city bonds for the completion of the work, with a provision that they should be permitted to collect tolls on vessels passing through the channel, until the bonds were paid. *Held,* that the effect of the ordinance was to transfer to the employees, to the extent of the power of the city to do so, the franchise of collecting tolls, and to require them to appropriate the sums collected to the payment of the bonds issued to them by the city.

5. CONSTITUTION CONSTRUED.— When congress has legislated under the grant of power contained in the federal constitution, and has regulated any particular matter pertaining to foreign or interstate commerce, a state has no right to interfere and pass laws which are tantamount to a regulation of the same subject.

6. SAME.— Under the commerce clause of the federal constitution there are some powers conferred on congress which, from their very nature, may be exercised by a state until the federal government shall legislate concerning them. Among this class is to be included the power to improve the waterways of a state by the removal of obstructions from their channels for the benefit of navigation, and to authorize persons or corporations to collect reasonable tolls for the increased facilities thus afforded to travel and commerce (citing authorities, for which see opinion).

7. STATUTES CONSTRUED — CONSTITUTIONAL LAW.— The legislation of Texas, the effect of which was to vest in private parties, as agents and contractors of the city of Corpus Christi, the franchise of collecting tolls from all freight passing through the channel between Corpus Christi Bay and Aransas Bay, until they had realized sufficient over and above the expenses of collection to retire bonds issued by the city in payment for the construction of the channel, was not in violation of the constitution of the United States.

8. RETROACTIVE LAWS.— An act of the legislature which would have been constitutional in conferring power on a municipal government to act *in futuro,* but which attempts to validate an ordinance adopted before authority to pass it was vested in the city by charter, was not a retroactive law within the meaning of art. I, sec. 14, of the state constitution of 1869.

9. STATUTE CONSTRUED.— There is no constitutional direction as to the manner in which municipal corporations shall enact ordinances, and it is competent for the legislature to validate by statute the ordinance of a municipal government passed to revive a repealed ordinance for the benefit of a contractor. Citing People *v.* Supervisors, 20 Mich., 95, and People *v.* Mitchell, 35 N. Y., 551.

10. CONSTITUTION CONSTRUED — CAPTION OF BILLS.—Section 196 of the act of May 22, 1873, entitled "An act to re-incorporate the city of Corpus Christi," and which attempted to validate as binding contracts certain city ordinances passed before that time, under which money had been expended by those contracting with the city, was not in violation of the constitution in force, as not being indicated in the caption of the act. The section was germane to the object of the act. The tendency of decisions is to construe the constitutional provision regarding the caption of legislative acts liberally.

11. CONSTITUTIONAL LAW.— An enactment by the legislature validating a defective city ordinance, so as to protect one who had expended money under it, is not the exercise of judicial power.

12. LEGISLATIVE ACT — CONSTITUTION CONSTRUED.—The constitutional provision which prohibits the amendment of a legislative act by a mere reference to the title of the law amended has no application to an act validating a municipal ordinance.

13. CONTRACT TO COLLECT TOLLS.— After the passage of the act of May 22, 1873, a valid contract existed between the city of Corpus Christi and Morris & Cummings, under which, upon conditions (referred to in the opinion), Morris & Cummings were to be allowed to collect tolls on vessels passing over the channel between Corpus Christi Bay and Aransas Bay.

14. REPEAL OF CITY CHARTER — CONTRACTS.— The power of the legislature to repeal an act creating a municipal corporation always exists; but it cannot be exercised to the injury of creditors of the corporation, or of those who hold contracts with it, and especially those who have complied with their contracts, and have not received their compensation from the municipal government. Citing Mount Pleasant v. Beckwith, 100 U. S., 514.

15. CONTRACTS — STATUTE CONSTRUED.—The obligation to perform its contracts rests upon a corporation as upon a natural person, and a legislative act which deprives a corporation of its charter cannot be construed as relieving it from liabilities to creditors already incurred.

16. AGENT — CONTRACT.— All agencies whereby the agent agrees with his employer to perform certain services for the latter, and to receive in return certain compensation, are contracts; and none the less so because the services are performed by one party in the name of the other, as agent.

17. STATUTE CONSTRUED — CONTRACT.— The agreement that contractors and agents of the city of Corpus Christi should collect tolls (as stated in the fourth subdivision of this syllabus) was not to be affected by an act of the legislature repealing the charter of the city; a different construction would violate both the constitution of the United States and of Texas.

APPEAL from Nueces. Tried below before the Hon. John C. Russell.

The opinion states the case.

*McCampbell & Givens*, for appellants, on jurisdiction, cited: Const., art. 5, sec. 8; State v. De Gress, 53 Tex., 387; Wood on Mandamus and Quo Warranto, p. 233; 63 N. Y., 320.

That the proceeding by *quo warranto* would not lie, they cited: R. S., Appendix, p. 45; Banton v. Wilson, 4 Tex., 406; Williams v.

Davidson, 43 Tex., 1; State v. Rio Grande R. R. Co., 41 Tex., 217; State v. Lyons, 31 Iowa, 432.

That the state could authorize the improvement of navigable waters, they cited: Sec. 196, law re-incorporating City of Corpus Christi, passed May 22, 1873; Kimball v. County of Mobile, 6 Otto, 691; Angell, Watercourse (Perkins' ed.), p. 721, note 4, citing Moor v. Veazie, 32 Me., 343; Angell, Watercourse, pp. 728, 750, and note; Wisconsin River Improvement Co. v. Manor, 28 Am. Rep.; Pound v. Turck, 5 Otto, 459; Veazie v. Moor, 14 How., 568; Grant v. Leach, 20 La. An., 329; State v. New Orleans Nav. Co., 5 Mar. (La.), 511.

That the rights of appellants could not be divested by legislative act or ordinance, they cited: Bill of Rights, Const. 1845 and 1870, sec. 14; Bill of Rights, Const. of 1876, sec. 16; Milam Co. v. Bateman, 54 Tex., 153; Terrett v. Taylor, 3 Pet. Cond. Rep., 295; 9 Cranch, 43; Pawlett v. Clarke, 3 Pet. Cond. Rep., 418; University v. Fay, 1 Murphy, 58; Dartmouth College Case, 4 Pet. Cond. Rep., 479; Cooley's Con. Lim., p. 278 and note; id., pp. 289, 295; Toulumne Redemption Co. v. Sedgewick, 16 Cal., 11; Commonwealth v. New Bedford Bridge, 2 Gray, 339; State v. Hawthorne, 9 Mo., 389; Von Hoffman v. City of Quincy, 4 Wall., 535; Broughton v. Pensacola, 3 Otto, 266; Dillon on Mun. Corp., p. 151; West River Bridge Co. v. Dix, 6 How., 529.

That the legislature could validate bonds irregularly issued by a municipal government, they cited: Treasurer v. Folsom, Withrow's American Corporation Cases, vol. 2, p. 551 (reported in 13 Minn., 219); City of Beloit v. Morgan, 7 Wall., 619; Cooley's Const. Lim. (3d ed.), pp. 224, 293, notes, 2, 373.

*Welch & Givens* and *D. McNeil Turner*, for appellees, on jurisdiction, cited: Const., art. XII, sec. 4; Gen. Laws 1879, extra session, ch. 48, secs. 1, 4, 6; Austin v. G., C. & S. F. R. R. Co., 45 Tex., 236; State v. S. P. R. R. Co., 24 Tex., 113; Brennan v. Bradshaw, 53 Tex., 330; State v. De Gress, 53 Tex., 387; State v. Hunton, 28 Vt., 594; Commonwealth v. Arrison, 15 Serg. & R., 127; People v. Utica Insurance Co., 15 Johns., 362; State v. McDaniel, 22 Ohio St., 354; People v. Miller, 15 Mich., 354; Statute of Anne, ch. 20, 9 Anne, A. D. 1711; High on Ext. Rem., sec. 624, citing People v. Holden, 28 Cal., 123; also secs. 650, 653, 712 and authorities, 713, 720 and 724; also ch. 13, secs. 684, 696, 697, 698; Angell & Ames on Corp., 734; Dillon on Mun. Corp., secs. 844, 888, 890 (3d ed.); State v. Messmore, 14 Wis., 115.

That the charter of a municipal corporation is not a contract and may be repealed at any time, they cited: Const. 1876, art. 12, sec. 3; Special Laws 1875, ch. 88, p. 135; Blessing v. City of Galveston, 42 Tex., 642; Meriwether v. Garrett, 12 Otto, 511; East Hartford v. Hartford Bridge Co., 10 How., 511; United States v. B. & O. R. R. Co., 17 Wall., 322; Girard v. Philadelphia, 7 Wall., 1; Barnes v. District of Columbia, 1 Otto, 540; Police Jury v. Shreveport, 5 La. An., 661; Amite City v. Clemens, 24 La. An., 27; New Orleans v. Hoyle, 23 La. An., 740; Philadelphia v. Fox, 64 Pa. St., 169; Trustees v. Tatman, 13 Ill., 30; Darlington v. Mayor, 31 N. Y., 164; Cooley on Const. Lim., secs. 192, 193, and authorities (4th ed.); Dillon on Mun. Corp. (3d ed.), secs. 64, 85, 87, and authorities, and sec. 967; Sedgwick on Cons. of Con. and Stat. Law, p. 582, and note of authorities.

A city corporation can make no sale or transfer of its charter rights unless authorized by the charter, citing: Special Laws 1854, ch. 95; Special Laws 1860, ch. 190; Williams v. Davidson, 43 Tex., 2; Pye v. Peterson, 45 Tex., 312; Dillon on Mun. Corp. (3d ed.), sec. 89 and authorities there cited; Cooley on Con. Lim., secs. 194 *et seq.* and authorities. As to delegation: Dillon on Mun. Corp. (3d ed.), secs. 96, 97; Cooley on Con. Lim., secs. 204 *et seq.* and authorities.

That an attempted validation of an illegal contract was violative of the constitution, they cited: Special Laws of 1884, ch. 95; Special Laws of 1860, ch. 190; Special Laws 1873, ch. 198, entitled "An act to re-incorporate the city of Corpus Christi," sec. 196 *et seq.;* Special Laws 1875, ch. 88; Const. 1869, secs. 17, 18, and Bill of Rights, 1869, sec. 14; Const. 1869, art. 2, sec. 1; Brewer v. West, 2 Tex., 377; Cooley on Con. Lim. (4th ed.), pp. 493, 494, 495, 496, and notes; also p. 227; Sedgwick on Cons. of Con. and Stat. Law, pp. 411, 599, 600; Green's Brice's Ultra Vires, p. 746; Dillon on Mun. Corp. (3d ed.), secs. 77 (45), 78, 79 (46), and notes; Burroughs on Public Securities, pp. 232, 420, 423.

Willie, Chief Justice.— This is an information in the nature of a *quo warranto*, filed by the county attorney of Nueces county, at the relation of N. Gussett and others, against the city of Corpus Christi, the firm of Morris & Cummings, and other defendants, requiring them to show by what authority they assumed the right to collect tolls on freight passing through the channel connecting the Bay of Aransas with the Bay of Corpus Christi. The information prayed for judgment ousting the defendants of the franchise which was alleged to have been usurped by them.

The city of Corpus Christi disclaimed all right to collect the tolls, admitted the invalidity of the claim, and asked that the suit might be dismissed as to the city, which was done.

The other defendants, joined by the Central Wharf and Warehouse Company, of Corpus Christi, a corporation chartered under our state laws, which had made itself party defendant to the suit, filed exceptions to the information; and Morris & Cummings and the above corporation filed a general denial, as also a special answer, setting up the facts under which they claimed the right of which it was sought to oust them.

They subsequently filed a supplemental answer, setting up additional grounds upon which they based their claim to tolls upon freight passing over the said channel.

To these answers the plaintiff filed a general demurrer.

The court below overruled the exceptions of defendants to the information, but sustained the demurrer of the plaintiff to the several answers of the defendants. The latter declining to amend, the court entered judgment ousting them of the franchise or right to collect toll on freight passing over the ship channel, and restraining them from exercising the right in future.

The defendants excepted and gave notice of appeal, and the case is now here for our review of the judgment and proceedings below.

It is insisted by the appellants that their demurrer to the information should have been sustained because the court had no jurisdiction of the suit. The objection to the jurisdiction raised here is that there is no allegation in the petition of the value of the franchise, nor that the relators are sought to be made liable for future tolls; nor is there any prayer for the recovery of former tolls paid by them.

Without passing upon the question of the jurisdiction of the district court in a suit of this nature regardless of the value of the franchise in controversy, it is a sufficient answer to the above objection to say that the information does state facts showing that the present franchise was of value far above the sum required to give the district court jurisdiction. It alleges the collection of more than $80,000 within less than seven years, and that the defendants were still unlawfully collecting tolls on freight passing through said waterway, to the damage of the relator and others. A franchise producing such an income is certainly of greater value than $500; and the allegation is that the relators as well as others contribute towards making up the aggregate sum paid to the claimants of the franchise.

Moreover, the present proceeding, although taken upon the rela-

tion of private persons, is in effect carried on by the state for the benefit not only of the relators but of the public generally. The amount of interest held by the relators in the subject-matter of this suit is of no importance, if the value of injury done to the public or of profit to the usurper by the exercise of the unlawful authority is sufficient to bring it within the jurisdiction of the court. State *v.* De Gress, 53 Tex., 387.

As to the ground taken under the demurrer of defendants, that *quo warranto* proceedings cannot be used to annul an ordinance irregularly passed, it is sufficient to say that the present suit has no such object. It seeks to oust parties of the enjoyment of a franchise claimed under legislation both of the state and the city government, and not to act directly upon the city of Corpus Christi and compel it to annul one of its ordinances. The latter was the object of the suit in the case cited as authority under this proposition; but it was expressly said that "an information in the nature of a *quo warranto* is authorized in cases where the franchise is exercised in the absence of the vital element of power," which is the ground of action in the present cause. State *v.* City of Lyons, 31 Iowa, 432.

It is also suggested in argument, though not made as a distinct proposition, that the county attorney had no right to file the information, but that this right and duty pertains to the office of the attorney-general alone. A sufficient answer to this is, that both the constitution and the statute passed in pursuance of it authorize the county attorney to institute the proceeding. Const., art. 12, sec. 4; Statute of 1879, ch. 48, sec. 1.

The case of State *v.* Paris R'y Co., 55 Tex., 76, cited by counsel, was an injunction suit to restrain a railway company from exceeding its powers, and thereby creating a nuisance by obstructing a street within a city. The court there held that the authority to institute the proceeding was given under art. 4, sec. 22, of the constitution, and Revised Statutes, arts. 2806, 2797, 2798, and the power was conferred upon the attorney-general alone. The present suit is brought under wholly different clauses providing for the specific proceeding of *quo warranto*, and is fully sanctioned by the terms of the law under which an information of this character is authorized.

The two remaining propositions urged in support of the demurrer are not appropriate to it, as they involve matters set forth in the special plea of the defendants, and will be considered in passing upon the demurrer sustained to that answer by the court below.

We are of the opinion that the court did not err in overruling the demurrer of appellants to the information.

In considering the demurrer of the state to the answers of the defendants below, it is proper to say that all state and city legislation bearing upon the right of the defendants to exercise the franchise from which it was sought to oust them were treated below as before the court, so that the controversy might, as far as possible, be determined upon demurrer. It would be a tedious task to recite all the numerous acts of the legislature and city ordinances contained in the record, or even the substance of them, and we shall therefore content ourselves with a statement of their results so far as the rights of the defendants are concerned to the controverted franchise.

It seems that the right to construct a channel between the bays before mentioned was originally granted to the city of Corpus Christi by an act of the legislature of February 16, 1854, and by it the city was authorized to employ assistants to do the work, and to pay for it with money in the treasury, and if that was not sufficient, to borrow money and give bonds to secure its payment to make up the deficiency. It was also authorized to levy tolls upon vessels passing through the channel, to refund the money used with interest, and to pay off the bonded debt accruing for the money borrowed to execute the work.

It seems further that, in pursuance of this act, the city employed Dean S. Howard and others to do this work, and the legislature, on August 22, 1856, supplemented the compensation these parties were to receive by allowing them sixteen sections of land for every mile of channel they should complete (of certain width and depth), not to exceed seven miles. On the 15th of April, 1858, a consolidated ordinance was passed which amounted to a contract with Dean S. Howard and others, by which the latter were to construct the channel and receive therefor the sum of $500,000 in city bonds, and were also to be allowed to collect toll upon vessels passing through the channel. The result of this ordinance was to transfer to Howard and his associates, so far as it was in the power of the city so to do, the franchise of collecting these tolls upon freight, and to require them to appropriate it towards the payment of the bonds received by them from the city.

On the 8th of November, 1860, the legislature incorporated the Corpus Christi Canal Company, and, among other rights conferred upon them, was that of acquiring from the parties already having the contract to construct the channel all the rights, franchises, etc., held by them under a certain act of the legislature and ordinance

of the city of Corpus Christi, the ordinance of April 15, 1858, not being mentioned.

This act recognized John M. Moore and other named parties as constituting the corporation and vested in them all the rights, franchises, etc., granted by the act. These rights were to be enjoyed by the company for fifty years, and no grant was to be made which would in the least impair them; but at the expiration of the above time the canal, with all its incidents, was to belong to the state.

The constitutional convention of 1869 adopted a declaration validating the acts of February 13, 1854, and of August 22, 1856, and the ordinance of April 15, 1858. It recognized the contract between the city and Dean S. Howard and others, and confirmed Moore as agent and contractor for the completion of the channel, and in all the rights, etc., of Dean S. Howard & Co. and J. W. Vineyard and his assigns, under the acts of the legislature and the ordinances of said city, and gave him two years in which to complete the channel. It validated the bonds issued under the ordinance of April 15, 1858, which, by transfer from the parties to whom they were originally issued, had come into the possession of said Moore. It declared them to be a lien upon the revenues of the channel, but provided that the city should be in no wise responsible for them. It authorized and required Moore to collect tolls on vessels passing over the channel, not to exceed five cents per barrel of freight, to pay the bonds and the further expenses of constructing the channel, and vested in them the land grants made by the act of August 22, 1856.

By ordinance of June 5, 1869, the city attempted to cancel the bonds issued to Howard; and by another of June 29, 1870, repealed an ordinance of November 6, 1868, authorizing Vineyard and his assigns, agents and contractors of the city to collect tolls for the use of the channel.

An ordinance was adopted by the city council on June 13, 1872, the effect of which was to recognize the defendants Morris & Cummings as having succeeded to all the rights of D. S. Howard & Co., and of Vineyard and his assigns, under the ordinance of April 15, 1858, and to constitute them agents of the city for collecting said tolls, and negotiating the bonds issued by the city as before stated. It also subrogated them to all the rights, franchises and powers conferred on the city by the act of February 11, 1854, but provided that no tolls should be collected until the channel was completed to a depth of eight feet, and a width of one hundred feet, and had been received by the city of Corpus Christi. This ordinance also validated the bonds for the benefit of Morris & Cummings, and

provided that the work should commence within six months and should be completed by the 15th of December, 1874. When the mayor and aldermen were notified of the completion of the channel they were to appoint a committee to examine and report thereon, and if reported as finished in accordance with the contract they were to accept the same and at once authorize the collection of tolls.

Another ordinance, adopted February 12, 1873, confirmed the foregoing and invested Morris & Cummings with all the rights, etc., conferred upon their predecessors by the ordinances above recited, and repealed such as conflicted with the spirit of the one then enacted.

On the 23d of May, 1873, the legislature passed an act in relation to the canal in which they recognized the work then being done by Morris & Cummings in constructing the same as being performed by virtue of the act of February 13, 1854, and the ordinances of April 15, 1858, 13th June, 1872, and 12th February, 1873. It validated and legalized said ordinances in every respect, excepting that it expressly refused to legalize the bonds issued to aid in the construction of the canal.

Again, on the 20th of May, 1873, the legislature passed an act to re-incorporate the city of Corpus Christi. The one hundred and ninety-sixth section of the act, among other things, recognized the ordinances above mentioned as valid and binding contracts between the city and Morris & Cummings, who had acted under and availed themselves of their provisions. The bonds issued under the ordinance of April 15, 1858, were declared valid and binding as a lien upon, and to be satisfied out of the tolls and revenues arising from, the ship channel but not otherwise.

An ordinance subsequently passed, after reciting that notice of the completion of the ship channel by Morris & Cummings, contractors and agents, had been duly given to the council at their meeting of May 12, 1874, and that a committee of three competent persons had reported unanimously that the channel had been finished in accordance with contract, accepted and received it as finished in accordance with the ordinance of April 15, 1858. It further declared that Morris & Cummings and their assigns, as agents of the city, were fully empowered, authorized and required, in the name of the city of Corpus Christi, but at their own expense and for their proper use and benefit, after a designated notice, to demand revenue and collect tolls on vessels, etc., not exceeding five cents for every five cubic feet on all freights passing through the channel, which rate of tolls was declared fixed and levied by the city.

By an act approved March 15, 1875, the legislature repealed the act of 1873 incorporating the city of Corpus Christi and all other acts relating to the incorporation and franchises of the same.

The effect of this legislation, if there be no constitutional objection to it, is to vest in Morris & Cummings, as agents and contractors of the city of Corpus Christi, the franchise of collecting tolls from all freight passing through the channel until they have realized sufficient, over and above the expenses of collection, to retire the bonds issued by the city in payment for the construction of the channel. This seems to be admitted by the appellee's counsel, the grounds of their demurrer being that the ordinances, and acts of the legislature, upon which the franchise rests, are illegal, unconstitutional and void.

And first, whilst it is admitted that a state may, in other cases, improve the water-ways within her limits, it is urged that she cannot do so where such improvement interferes in any degree with foreign or interstate commerce. It is said that the right to regulate commerce with foreign nations and among the several states belongs exclusively to congress, and the states have no right to obstruct the same by the imposition of tolls or charges upon such commerce as may pass over the highways of transportation within her borders.

It is true that where congress has legislated under this grant of power, and has regulated any particular matter pertaining to foreign or interstate commerce, the states have no right to interfere and pass laws which are tantamount to a regulation of the same subject.

For instance, if the general government had passed any law inconsistent with the right to collect tolls for the passage of vessels over the channel between Corpus Christi and Aransas Bays, the state could not have granted such a franchise as is claimed by the defendants in this case.

But we are not pointed to any act of congress upon this subject whatever, and we certainly know of none which has attempted such a regulation.

It is not enough that the harbor of Corpus Christi, and the water-borne commerce that passes to and from it, are within the general laws regulating the commerce of the country. There must have been some legislation of the general government, either general or special, which is at war with any claim of right to an imposition of tolls where the legislature has authorized them as in this instance.

The principle seems to be that some of the powers conferred by the commerce clause of the United States constitution are in their

"nature exclusive in congress, and these the states can exercise under no circumstances; whilst there are others which, from their nature, may be exercised by the state till congress shall see proper to cover the same ground by such legislation as that body may deem appropriate to the subject." Justice Miller in Pound *v.* Turck, 95 U. S., 459; Willson *v.* Blackbird Creek Marsh Co., 2 Pet., 245.

It is now uniformly held that within the latter class is to be included the power of a state to improve her water-ways by the removal of obstructions from their channels for the purpose of improving navigation, and to authorize persons or corporations making the improvement to collect reasonable tolls for the increased facilities thus afforded to travel and transportation. Gould on Waters, sec. 143; Kellogg *v.* Union Co., 12 Conn., 7; Thames Bank *v.* Lovell, 18 id., 500; McReynolds *v.* Smallhouse, 8 Bush, 447; Packet Co. *v.* Catlettsburg, 15 Otto (U. S.), 559.

This principle is so well sustained by the authorities that no further discussion of it is required. We think, therefore, that the legislation of our state upon the subject of the franchise in question is not in violation of the constitution of the United States.

But it is further urged that the acts of the legislature by which the franchise is recognized in Morris & Cummings, or conferred upon them, are retroactive laws, and therefore within the prohibition of art. 1, sec. 14, of the constitution of 1869.

Only two acts were passed subsequently to the time when Morris & Cummings appear upon the scene as successors to the parties who had previously had contracts with the city for the construction of the channel, viz.: the act of May 23, 1873, and that of June 1, 1873. The ordinances which these acts purported to validate were those of 15th of April, 1858; 13th of June, 1872, and 12th of February, 1873.

There is no doubt but that, under the act of February 11, 1854, the city had the right to construct the work, and to issue bonds and borrow money to pay for the same, and to collect tolls to raise money to retire the bonds, and refund herself the amount expended. If the ordinance of 1858 was illegal it was because the city exceeded her powers in making a contract with other parties to perform the work; in transferring to them the franchise of collecting tolls, and in the issuance of bonds to pay for the services of such parties. Granting that the ordinance was void for want of power in the city to do these things under the charter, or for want of any other power exercised in that ordinance, the legislature could have authorized everything that was done by the ordinance, and then, of

course, it would have been legal. There is no constitutional objection to an act which would have embraced every power exercised in the ordinance; and what the legislature could lawfully have authorized before the ordinance had passed it could ratify afterwards when passed without the previous authority. Single v. Supervisors, 38 Wis., 363; Blount v. City of Janesville, 31 Wis., 648; Palmer v. Fitts, 51 Ala., 489; People v. Mayor, 51 Ill., 17; Cooley's Const. Lim., 371.

This rule is subject to some exceptions which are noted in the authorities, but none of them are applicable to the present case.

We do not regard this ordinance as materially affected by those of June 5, 1869, and June 20, 1870. The last mentioned ordinance does not repeal it expressly or by implication. Its object was to repeal another ordinance, and it does not appear that the one of April 15, 1858, interfered in the least with such repeal. It cannot, therefore, be considered a conflicting ordinance. That of June 5, 1869, attempts to render void the bonds issued under the ordinance of April 15, 1858. It does not appear by what authority the council could thus cancel their contract. They recite their reasons, but there is nothing to show that they were admitted to be true by the other contracting parties. But admitting that they were, and that the ordinance of April 15, 1858, was repealed in all its provisions, the subsequent acts of the council, of June 13, 1872, and February 12, 1873, were passed with the plain design of reviving the repealed ordinance for the benefit of Morris & Cummings. Admitting, also, that this was an irregular method of passing an ordinance, the irregularity is not one that the legislature could not cure by subsequent statutes. There is no constitutional requirement that the by-laws of a municipal corporation shall be adopted in any particular manner. There may have been a requirement in the charter of Corpus Christi that would render these ordinances void for irregularity in their adoption. But that charter was an act of the legislature, and might have authorized just such a method of reviving ordinances, and if so, the subsequent ratification of the method validated this action of the council. See authorities already cited; also People v. Supervisors, 20 Mich., 95; Dubuque v. District, 13 Iowa, 555; People v. Mitchell, 35 N. Y., 551.

We regard the acts of the city previous to the charter of 1873, standing by themselves, as of but little importance in the determination of this case. We can easily admit that the council exceeded its powers, both as to their subject-matter and the manner of passing these ordinances, and yet the contract which they attempt

to make must be regarded as ratified and made valid by subsequent legislation.

It is said to be a general rule that "it is competent for the legislature to give retrospectively the capacity it might have given in advance, and to dispense retrospectively with any formality it might have dispensed with in advance." Cooley Prin. of Const. Law, 325.

This want of capacity may as well be the lack of power in a corporation to make the contract as in an individual; and the only restriction as to ratifying its defective execution is that the defect m ist not be some omission with which the legislature could not dispense. Wade on Retroactive Laws, § 257, and authorities cited.

But it is said that the one hundred and ninety-sixth section of the act of May 22, 1873, which ratifies the action of the council, is itself unconstitutional, because its object is not expressed in the title of the act. This title is "An act to re-incorporate the city of Corpus Christi." This section validates all ordinances of the city in force at the time of its passage. It especially validates the ordinances of April 15, 1858, June 13, 1872, and February 12, 1873, and makes them valid and binding contracts between Morris & Cummings, who had acted under and availed themselves of their provisions. It also validates the bonds issued under the first ordinance to be paid out of the tolls and revenues arising from the said ship channel, but not otherwise.

It is certainly germ.               ct of a bill to incorporate a city to give it power to            ces and to make contracts through such ordinances; u.            ls and provide for their payment. If so, it must also u            ate to ratify ordinances already passed and contracts made,            with all the incidents of such contracts and the methods pro.            for their performance on the part of the city.

The tendency of the decisions is to construe the constitutional provision on this subject liberally "rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it was adopted." Cooley Const. Lim., 146.

The digging of the canal was a matter in which Corpus Christi was deeply interested, and a work which she had contracted to have constructed in pursuance, as she supposed, of a former charter. It would of course be entirely proper, in a subsequent amended charter, to regulate all matters in which the city was interested, and had, through her council, undertaken to have performed. Her rights and her liabilities were legitimate subjects to be provided for

in such an act, and to such an act any one wishing to know as to what legislation had been adopted upon such subject would look for information.   Subjects far less appropriate to the title of statutes have been held as properly included within them by the courts of other states, and with a reference to some of them we conclude this point, holding that the one hundred and ninety-sixth section of the act of May 22, 1873, is valid and constitutional.   Evans *v.* Sharp, 29 Wis., 564; State *v.* Town of Union, 4 Vroom, 350; Sharp *v.* Mayor, 31 Barb., 572; O'Leary *v.* Cook Co., 28 Ill., 534.

The objection raised, that this or any other act bearing upon the contract of Morris & Cummings is a usurpation of judicial power by the legislature, is hardly worthy of our attention.   The courts of the state had never passed upon the ordinances or contracts of the city or judicially determined that they were void.   There was, therefore, no judgment set aside or interfered with by the action of the legislature.   Neither did the legislature, in ratifying illegal or informal ordinances, determine that they, or the contracts claimed under them, were good in law.   On the contrary, they vitalized and gave them effect, because in law they might possibly have been held of no validity.   They supplied the defects for which the courts might have declared them void, which was clearly the exercise of the legislative and not of judical power.   Evans *v.* Sharp, 29 Wis., 573, 574.

We do not think that the legislature, in validating the contract, granted extra compensation to Morris & Cummings for the construction of the canal.   They were to receive no greater sum than the original contract allowed them, nor were they granted any additional remedies not contemplated by the ordinances which were validated by the act.

Nor is it obnoxious to the objection that it amends another law by reference to its title.   We know of no authority for extending the provision of the constitution upon that subject to municipal ordinances validated by statute, and we are referred to none by counsel.   The provision is a restraint upon the legislature in revising its own acts.   The section of the statute in question does not make the ordinance a law of the state, but gives it validity as an ordinance of the corporation of Corpus Christi.   The legislature did not attempt to re-enact or amend the ordinances; they merely ratified them so as to remedy the defects in their passage by the council, and remove any objection as to the want of power in that body to adopt them.

These views lead us to the conclusion that from and after the passage of the act of May 22, 1873, a valid contract existed between

the city of Corpus Christi and Morris & Cummings, whereby, for the consideration of the bonds issued by the city originally to D. S. Howard & Co. and transferred to Morris & Cummings, which bonds are to be satisfied out of the tolls and revenues of the channel, to be collected by Morris & Cummings at their own expense, the latter agreed to complete the channel to the depth of eight feet and the width of one hundred feet, and to keep it of those dimensions, the work to be completed by the 15th of December, 1874, and to be accepted by the city, after which acceptance Morris & Cummings were to be allowed to commence the collection of tolls. It is proper to say here that the answer, whose allegations must be taken as true under the demurrer, alleges that the channel had been at all times kept open of the dimensions as required by the ordinance.

In pursuance of this contract Morris & Cummings entered upon the performance of their part of its obligation and completed the channel as required about the 12th of May, 1874. Their work was accepted by the city as done and performed in strict compliance with the contract, and they were authorized in the name of the city, but at their own cost, and for their own use and benefit, after notice, to collect tolls upon vessels passing through the channel. Subsequently to the adoption of the ordinance accepting the channel, etc., as above stated, the legislature, on March 15, 1875, repealed the act of May 22, 1873, incorporating the city of Corpus Christi.

It is contended by the appellee that this repeal operated to extinguish all right on the part of Morris & Cummings to collect tolls for the use by vessels of the channel they had constructed.

The power of the legislature to alter or repeal an act chartering a municipal corportion is undoubted. 1 Dillon on Mun. Cor., §§ 52, 113; Bass v. Fontleroy, 11 Tex., 698.

But this power cannot be exercised to the injury of creditors of such a corporation or of persons holding contracts with it, especially when fully performed on their part so as to entitle them to the compensation provided for in the contract. 1 Dillon on Mun. Cor., 41, 42, 114; Bass v. Fontleroy, *supra;* Smith v. Appleton, 19 Wis., 492; Mount Pleasant v. Beckwith, 100 U. S., 514.

The present repealing act must be considered in reference to the provision of the constitution of the United States. forbidding the states to pass laws impairing the obligation of a contract, and, also, to a provision to the same effect in sec. 14, art. 1, of the state constitution of 1869.

The same obligation to perform its contracts rests upon a corporation as upon a natural person. Whilst the legislature may deprive

the corporation of its chartered rights and forbid its exercising any of the governmental powers, it must not be presumed that it intended also to absolve it from its liabilities to creditors, or contractors whose rights to compensation have become vested.

A contrary rule would place contractors with municipal corporations so perfectly at the mercy of the legislature that few persons, if any, would accept employment under such corporations or make contracts with them.

But it is contended by appellee that Morris & Cummings were not, in the sense of the term as used in the constitution, contractors with the city of Corpus Christi, but merely agents of that city to collect the channel revenues; and they argue that their rights to the tolls died with their principal.

It is true that Morris & Cummings and their predecessors are sometimes styled in the ordinances and statutes "agents and contractors," and sometimes "agents" only. But it is unimportant what term is used, or whether they be agents or whether they be contractors, or both; it is clear from what we have seen that there was a contract between them and the city which they fully performed on their part, to the satisfaction of the corporation, and for which they were to receive a consideration not paid at the time the charter was repealed. An agent may have a contract with his principal respecting the subject-matter of his agency, and such a contract will be within the protection of the constitution, if it be one protected between other parties.

The agency held by the defendants when the charter was repealed was not an authority to dig the channel for the city. That had been finished, and for so doing they were entitled to the compensation agreed upon between the parties. To secure this compensation according to contract, Morris & Cummings were appointed agents of the city to collect tolls, as had been previously agreed, and to apply them to the payment of the debt due them from the city for the work. The original contract with the city had been fully executed on their part, but the city had not performed the obligations resting upon it. The city had received the benefit of their services, and was bound to their compensation. This compensation was to be paid in tolls, and Morris & Cummings were the agents of the city to collect these for their own benefit. The case, then, was that not only of a contract performed by Morris & Cummings, and still obligatory on the city, but it was that of a power coupled with an interest, the whole of which interest belonged to the agents. All agencies wherein the agent agrees with his employer to perform

certain services for the latter, and to receive in return certain compensation, are contracts, and none the less so that the services rendered are performed in the name of one party by the other as agent. The agency may be one that is revocable so as to invalidate any future acts done by virtue of it, but whether partly or wholly performed a revocation cannot deprive the agent of compensation for the services already rendered. Story on Agency, sec. 466.

Here, after the work had been completed and accepted, and the defendants became entitled to collect their compensation in the manner provided by law, the council again made them agents to secure their compensation as provided in the former contract. It was equivalent to saying that, having done the work in manner as provided by ordinance, Morris & Cummings are entitled to the bonds issued by the city and to collect tolls till they are paid. The council authorizes them to make the collection until they have received enough to pay the entire bonded debt with interest. This is a confirmation of the previous contract; an acknowledgment of an indebtedness by reason of its performance by Morris & Cummings; and a re-grant of authority to use the means provided by the contract to raise money to pay the resulting indebtedness on the part of the city. The whole transaction evidences a contract of the most sacred character, which the state could not revoke, cancel or set aside without a violation of the constitutional rights of the defendants.

We are therefore of opinion that the act of the legislature, repealing the charter of the city of Corpus Christi, cannot be construed to interfere with the right of the appellants to collect tolls, as claimed in their answer, without violating both the constitution of the United States and of this state. Hence, the court erred in sustaining the demurrer to the answer, and for this error the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.